**In re Jerre M. FREEMAN.**

No. 93–1449.

United States Court of Appeals, Federal Circuit.

July 12, 1994.

Bradford E. Kile, Baker & McKenzie, Washington, DC, argued, for appellant. With him on the brief were Ruffin B. Cordell and Stuart M. Weitz.

Murriel E. Crawford, Associate Sol., Com'r of Patents and Trademarks, Arlington, VA, argued, for appellee. With her on the brief were Fred E. McKelvey, Sol. and Lee E. Barrett, Associate Sol.

Before RICH, PLAGER, and SCHALL, Circuit Judges.

RICH, Circuit Judge.

Dr. Jerre M. Freeman appeals from the March 22, 1993 decision of the Board of Patent Appeals and Interferences (Board) of the United States Patent and Trademark Office (PTO) sustaining the Examiner's rejection of claims 10–21 of Reexamination No. 90/001,235 (the '235 application)[1] under 35 U.S.C. § 305 as impermissibly broadening the scope of the claims in a reexamination proceeding.[2] We affirm.

## I. BACKGROUND

### A. *The Invention*

Claims 10–21 of the '235 application are directed to an intraocular lens device (IOL) implanted into a human eye after the eye's natural lens affected with cataract has been surgically removed. The implanted device consists of an artificial lens and attached posts or threads, called haptics, used to attach the lens to the eye and hold the lens in place. Of the claims at issue, claims 10, 14, 15, 19, 20, and 21 are independent. Claim 10 is representative and recites:

10. An intraocular lens device for implantation into a human eye, said lens device comprising:

an optical lens suitable for replacing a human crystalline lens, said optical lens having a mean density greater than the density of the aqueous humor of the human eye; and

support means comprising a loop member attached to said lens at at least one end thereof and extending away from said optical lens posterior to the iris of a human eye for providing a plurality of support

---

1. Reexamination No. 90/001,235, filed on May 8, 1987, is a reexamination of Reissue Patent No. 31,640 issued on August 7, 1984 from application Serial No. 44,032 filed on May 31, 1979, which is a reissue of U.S. Patent No. 4,077,071 issued on March 7, 1978 from application Serial No. 666,-651 filed on March 15, 1976.

2. The rejections under 35 U.S.C. §§ 102(b), 103, and 112, first paragraph, addressed in the Board's opinion, are not at issue in this appeal.

points at least within the posterior chamber of the human eye to radially position the optical lens generally upon a central optical axis of an eye and to hold said optical lens in place when implanted into the human eye, said support means having a density less then the density of the aqueous humor of the eye for providing at least a degree of buoyant uplift force to said optical lens when said intraocular lens device is implanted into the human eye even though the overall intraocular lens device is neither neutrally buoyant or positively buoyant in the aqueous humor of a human eye. (underlining represents claim amendments in the '235 application).

## B. *Relevant History*

Dr. Freeman's original Patent No. 4,077,-071 (the '071 patent) issued with claims 1–9. His Reissue patent No. 31,640 (the reissue patent) issued with original claims 1–9 and new claims 10–22. On October 5, 1984, Dr. Freeman sued the Minnesota Mining and Manufacturing Company (3M) alleging infringement of certain claims of the reissue patent, including claims 10, 11 and 21 at issue here. On May 8, 1987, 3M filed a request for reexamination of the reissue patent which was granted by the PTO. However, the PTO *sua sponte* suspended the reexamination proceeding upon commencement of the infringement trial.[3]

The trial court held that the asserted claims of the reissue patent were invalid and not infringed by 3M's IOLs. *Freeman v. Minnesota Mining and Mfg. Co.*, 693 F.Supp. 134, 9 USPQ2d 1111 (D.Del.1988). In its discussion of infringement, the district court addressed the phrase "at least a degree of buoyant uplift" in claims 10, 11, and 21 of the reissue patent stating that "[m]ost of the trial involved interpreting this phrase and attempting to distinguish it from [other language] of Claim 1." *Freeman*, 693 F.Supp. at 142, 9 USPQ2d at 1119. The district court also noted the different interpretations of this phrase advanced by the parties:

Freeman argues that the phrase means the result of adding any amount of buoyant

support materials, thus reducing the density and weight of the device by any amount, even if the reduction is not to a state of neutral buoyancy. 3M, on the other hand, argues that an object with buoyant uplift must possess neutral or positive buoyancy. It further contends that the phrase "at least a degree of" means a small amount of buoyant uplift, rather than something that changes the definition of "buoyant uplift." *Id.*

After discussing the specification, the prosecution history, and the testimony of the experts, the trial court concluded that "3M's interpretation is the correct meaning of the phrase. Thus, 'buoyant uplift' requires at least neutral buoyancy." *Id.* The district court stated that such an interpretation was supported by the specification and by the Examiner's belief that merely reducing the density of the IOL device did not necessarily produce the claimed buoyant uplift, as argued by Dr. Freeman. The court also opined that such an interpretation gave "meaning to the claims." *Freeman*, 693 F.Supp. at 144, 9 USPQ2d at 1121.

Based on this claim interpretation, the district court held that 3M did not infringe claims 10, 11, 21, or 22. Specifically, the district court stated:

None of the IOLs infringe any of the reissue claims, however, because none of them have support or buoyancy means that provide at least a degree of buoyant uplift to the lens. . . . If the Court were to construe these claims broadly, as Freeman desires, to cover any reduction in weight due to the addition of buoyancy means, then all of the IOLs would infringe Claims 21 and 22, and all but Style 70 would infringe Claims 10 and 11. . . . However, because the Court has found this construction to be improper, none of the IOLs infringe claims 10, 11, 21, or 22.

*Freeman*, 693 F.Supp. at 145, 9 USPQ2d at 1121–22.

Dr. Freeman appealed the judgment of the district court to this court and argued that the district court's above finding of nonin-

---

3. The PTO is no longer authorized to stay reexamination proceedings based on pending civil infringement litigation. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 7 USPQ2d 1152 (Fed.Cir.1988).

fringement was based on a misinterpretation of claims, 10, 11, 21, and 22. Dr. Freeman argued as he did in the district court that the phrase "at least a degree of buoyant uplift" is satisfied if the support means itself (as distinguished from the entire IOL device) is buoyant in the aqueous humor, thereby imparting a "degree of buoyant uplift" to the lens and making the implant lighter than the lens by even the smallest degree.

This court, on appeal, affirmed the district court's finding of noninfringement and held that the district court's interpretation of the claims was not erroneous and that the court's finding of no infringement was not clearly erroneous. The holding of invalidity was vacated. *Freeman v. Minnesota Mining & Mfg. Co.,* 13 USPQ2d 1250, 1252, 1989 WL 86448 (Fed.Cir.1989) (non-precedential), *reh'g denied,* 1989 WL 86448, 1989 U.S.App. LEXIS 14,958 (Fed.Cir. Sept. 30, 1989), *cert. denied,* 494 U.S. 1070–71, 110 S.Ct. 1794, 108 L.Ed.2d 794 (1990).

### C. *The Rejection*

The reexamination, which as stated above was stayed upon commencement of trial in the district court, was resumed after conclusion of the appeal and the Examiner finally rejected claims 10–21 of the '235 application under 35 U.S.C. § 305 as impermissibly seeking to enlarge the scope of the claims as interpreted by the district court.

The Examiner's Answer stated that

[t]he reissue claims [10–21] are considered to be limited to IOLS [sic] ("intraocular lenses") that possess either neutral buoyancy or positive buoyancy and would *float* in the aqueous humor whereas the *amended* claims [10–21] would also *encompass* IOLS [sic] which possess *negative buoyancy* and would *sink in the aqueous humor* thereby *enlarging the scope* of the claims. [Emphasis in original.]

In response to Dr. Freeman's argument that the reexamination claims were not broadened in scope and that any broadening of the patent claims occurred during reissue, as permitted by the reissue statute, the Examiner contended that

the reissue record indicates that the Examiner believed one does not produce "buoyant uplift" solely by reducing the density of an object, but would possess a "buoyant uplift" or "at least a degree of buoyant uplift" if the object had a density less than or equal to the density of a fluid and would tend to be weightless rather than seek a position at the lowermost level in the fluid. Therefore, it obviously follows that the interpretation given by the Examiner is that the terms "buoyant uplift" or "at least a degree of buoyant uplift" covered lenses that possess either neutral or positive buoyancy and would *float* in the aqueous humor. In addition appellant did not contest this interpretation at the time of allowance and the District Court also agreed with this interpretation ... Thus, the added limitations related to the buoyant uplift force to the optical lens including an IOL device which is neither neutrally buoyant or positively buoyant affectively [sic] covers lenses which also *sink* in the aqueous humor and would be broader than the original reissue claims which were interpreted by the Examiner and the District Court to cover only lenses which were weightless and would *float* in the aqueous humor. [Emphasis in original.]

Dr. Freeman appealed the Examiner's rejection to the Board. 35 U.S.C. §§ 306, 134.

### D. *The Board Decision*

The Board affirmed the Examiner's rejection of claims 10–21 under 35 U.S.C. § 305 as impermissibly broadening the reexamination claims. However, the Board did not agree with the interpretation of reissue claims, 10, 11, 21, and 22 by the district court and affirmed by this court. Specifically, the Board stated:

The claims (10–22) added during the reissue proceeding do not, ... in our view, either explicitly or implicitly include or require the intraocular lens device (i.e., the optical lens and the support loops) to possess a neutral or positive buoyancy ... The scope of the claims sought in the reissue always indicated the lens device was to have a degree of buoyancy which

was something less than that achieved by the situation wherein the overall mean density of the lens device was substantially that of the aqueous humor of the eye as recited in the original claims.

For this reason, the Board explained, "the phrase 'even though the overall intraocular lens device is neither neutrally buoyant or positively buoyant in the aqueous humor of the human eye' (claim 10) and similar language [in the other independent claims at issue] should *not* be perceived as constituting an enlargement of the scope of these claims." (Emphasis in original.) The Board stated its disagreement with the interpretation of the claims by the district court and went so far as to say that "the District Court's finding and holding with respect to the limitation 'at least a degree of buoyant uplift' ... is totally contrary to what the appellant always intended the limitations to denote."

In spite of its disagreement with the district court's interpretation of the claims, the Board, however, affirmed the Examiner's rejection under § 305 because it found itself to be "constrained to accept the court's interpretation of the claim language of the reissue claims 10–21." In accepting that interpretation, the Board stated that

it follows that the amendatory language now at issue which the appellant has added to these claims, seeking to reestablish the appellant's original intent as to the scope of the claims of the reissue and what they were intended to cover (i.e., something less than neutral buoyancy) is a broadening of the reissue claims and inappropriate at this time.

Dr. Freeman appealed the Board's decision to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## II. DISCUSSION

### A.

*The Rejection Under 35 U.S.C. § 305*

35 U.S.C. § 305, entitled "conduct of reexamination proceedings" sets forth in part that "[n]o proposed amendment or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceed-

ing." Whether amendments enlarge the scope of a claim is a matter of claim construction. Claim construction is a question of law which we review *de novo*. *In re Donaldson Co., Inc.*, 16 F.3d 1189, 29 USPQ2d 1845 (Fed.Cir.1994) (in banc).

A claim is enlarged if it includes within its scope any subject matter that would not have infringed the original patent. *Ex parte Neuwirth*, 229 USPQ 71 (PTO Bd.Pat. App. & Int'f 1985) (addition of "substantially" to the word "rounded" in a claim constitutes a broadening of the claim in contravention of 35 U.S.C. § 305).

The test for when a new claim enlarges the scope of an original claim under § 305 is the same as that under the two-year limitation for reissue applications adding enlarging claims under 35 U.S.C. § 251, last paragraph. *Chisum, Patents*, 11.07[4][d] n. 25 (1993); *In re Yamamoto*, 740 F.2d 1569, 1572, 222 USPQ 934, 937 (Fed.Cir.1984). In the reissue context this court has stated that

a claim of a reissue application is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent ... A claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects.

*Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1037 n. 2, 4 USPQ2d 1450, 1453 n. 2 (Fed.Cir.1987).

In essence, the Board held here that amendments during reexamination to the final clause of the independent reissue claims 10, 14, 15, 19, 20, and 21 broadened the scope of these claims in light of the interpretation of claims, 10, 11, 20, and 21 by the district court and affirmed by this court. Dr. Freeman argues on appeal that the amendments to the independent claims do not broaden the scope of these claims because the additional claim language necessarily further limits the scope of the claims.

However, we cannot agree with Dr. Freeman that simply because he added words to his claims that those claims are further nar-

rowed in scope. The English language is not that simple. Rather, given the interpretation of the district court during the infringement litigation, it is clear that the amendments to the independent claims during reexamination attempt an end run around the interpretation there that the claims are limited to at least overall neutral buoyancy. As much was admitted by Dr. Freeman who stated during prosecution that the claims were amended to be consistent with his intent in reissuing the application, but with the benefit of knowing how the claims could be "misconstrued."

Specifically, independent claim 10 was amended to recite "even though the overall intraocular lens device is neither neutrally buoyant or positively buoyant in the aqueous of a human eye." Independent claims 14, 15, 20, and 21 were similarly amended. Independent claim 19 was amended to recite reducing "the overall mean density of the intraocular lens device *from being negatively buoyant.*" Thus, the amended claims include within their scope a device with an overall negative buoyancy, something explicitly found by the district court to be outside of the scope of reissue claims 10, 11, and 21.[4] We accordingly agree with the Board that the amendments made during reexamination enlarge the scope of the reissue claims as interpreted by the district court. The issue therefore becomes whether the Board was bound by the interpretation of the reissue claims by the district court, as it held it was.

### B.

*Issue Preclusion*

■ Under the doctrine of issue preclusion, also called collateral estoppel, a judgment on the merits in a first suit precludes relitigation in a second suit of issues actually litigated and determined in the first suit. *Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867–68, 99 L.Ed. 1122 (1955). Issue preclusion, as distinguished from claim preclusion, does not include any requirement that the claim (or cause of action) in the first and second suits be the same. Rather, application of issue

preclusion centers around whether an issue of law or fact has been previously litigated. *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1091, 220 USPQ 1017, 1019 (Fed.Cir.1984). The underlying rationale of the doctrine of issue preclusion is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided over again. *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569, 221 USPQ 394, 397 (Fed.Cir.1983).

■ Issue preclusion is appropriate only if: (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action. *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 702, 218 USPQ 965, 967 (Fed.Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984). We address these conditions seriatim.

### (1) *Identical issue*

■ The general principle of [issue preclusion] ... is that a right, question or fact distinctly put in issue ... cannot be disputed in a second suit. *Southern Pac. R.R. v. U.S.*, 168 U.S. 1, 48, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). Where an appellate court has decided a specific question, the doctrine of issue preclusion should normally prevent relitigation of that issue. *In re Herr*, 377 F.2d 610, 619, 153 USPQ 548, 555 (CCPA 1967) (Rich, J. concurring).

Difficulty sometimes arises, however, in delineating the issue on which litigation is, or is not, foreclosed. The problem involves a balancing of important interests: on the one hand a desire not to deprive a litigant of an adequate day in court; on the other hand, a desire to prevent repetitious litigation of what is essentially the same dispute. Restatement (Second) of Judgments § 27 comment c (1980).

---

4. We note that independent claims 14, 15, and 19 were not specifically addressed by the district court. However, each of these claims includes

the phrase "buoyant uplift" specifically addressed by the district court and found to require at least neutral buoyancy of the overall IOL.

The district court, in its infringement analysis, explicitly interpreted the phrase "at least a degree of buoyant uplift" in independent claims 10 and 21. This phrase is also in reissue claim 15 at issue here. In making this determination, the district court also interpreted the phrase "buoyant uplift" recited in independent claims 14, 19, and 20. The district court specifically decided that "buoyant uplift" in the claims requires at least neutral buoyancy based on its review of the claim language, specification, prosecution history, and expert testimony. *Freeman*, 693 F.Supp. at 144, 9 USPQ2d at 1121. This court affirmed the trial court's interpretation.

During reexamination, Dr. Freeman admittedly amended the reissue claims to avoid this interpretation of the claims. The Examiner, in rejecting the claims under section 305, predicated the rejection on interpretation of the phrase "buoyant uplift." Additionally, the Board, in upholding the rejection, based its decision on the district court's "finding and holding with respect to the limitation 'at least a degree of buoyant uplift.'" It is eminently clear, therefore, that the identical issue, the interpretation of the phrase "buoyant uplift," presented in the district court litigation is also present in the reexamination proceeding.

(2) *Actually decided*

 The requirement that the issue have been actually decided is generally satisfied if the parties to the original action disputed the issue and the trier of fact decided it. *Mother's Restaurant*, 723 F.2d at 1569, 221 USPQ at 397, (quoting *Continental Can Co. v. Marshall*, 603 F.2d 590, 596 (7th Cir.1979)). *See* Restatement (Second) of Judgments § 27 comment d (1980).

The parties to the district court action disputed the meaning of the phrase "buoyant uplift." In fact, the district court commented that most of the trial involved interpreting this phrase. *Freeman*, 693 F.Supp. at 142, 9 USPQ2d at 1119. The district court also resolved the meaning of this claim phrase and did so, as explained above, in favor of 3M. Therefore, it is clear that the issue—the meaning of the phrase "buoyant uplift"—was actually decided.

(3) *Essential to the judgment*

 In order to give preclusive effect to a particular finding in a prior case, that finding must have been necessary to the judgment rendered in the previous action. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979); Restatement (Second) of Judgments § 27 comment j (1980). The purpose of this requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation. *Mother's Restaurant*, 723 F.2d at 1571, 221 USPQ at 398.

In the context of claim interpretation, this court has held that

> judicial statements regarding the scope of patent claims are entitled to collateral estoppel effect in a subsequent infringement suit only to the extent that determination of scope was essential to a final judgment on the question of validity or infringement.

*A.B. Dick Co.*, 713 F.2d at 704, 218 USPQ at 968. This court has warned, however, that statements regarding the scope of patent claims made in a former adjudication should be narrowly construed. *Id.* Additionally, to apply issue preclusion to a claim interpretation issue decided in a prior infringement adjudication, "the interpretation of the claim had to be the reason for the loss [in the prior case] on the issue of infringement." *Jackson Jordan, Inc. v. Plasser American Corp.*, 747 F.2d 1567, 1577, 224 USPQ 1, 8 (Fed.Cir. 1984).

As explained above, the issue, interpretation of the phrase "at least a degree of buoyant uplift," was actually decided in the district court. Additionally, interpretation of that phrase to require at least neutral buoyancy of the IOL device was necessary to the holding of noninfringement. The district court held that based on its interpretation of this phrase, there was no infringement by 3M of reissue claims 10, 11, 20, and 21. In fact, the district court indicated that if this phrase was not interpreted in that manner, all models of 3M's IOLs would infringe claims 20 and 21, while all but one would infringe claims 10 and 11. Thus, as required

under *Jackson Jordan*, the interpretation of the phrase "buoyant uplift" was the reason for Dr. Freeman's loss on the issue of infringement of the reissue claims in the district court. Thus, the interpretation of the phrase "buoyant uplift" was necessary to the district court's judgment.

Moreover, this is not a case where the second proceeding, the reexamination, involving the same issue was unforseen. Because the proceedings in the PTO were stayed pending the completion of the district court action, Dr. Freeman should have been aware of the possibility that the Board would accord preclusive effect to the district court findings. *Mother's Restaurant*, 723 F.2d at 1572, 221 USPQ at 399.

(4) *Full and fair opportunity to litigate*

█ To apply issue preclusion, the party against whom the estoppel is being asserted must have been accorded a full and fair opportunity to litigate in the prior court proceeding the very issue he now seeks to relitigate. *Jackson Jordan*, 747 F.2d at 1574, 224 USPQ at 7. There is no requirement that the parties be the same in both instances; preclusion may be invoked in a case involving the same plaintiff and either a party or a non-party to the first action. *Blonder–Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Jackson Jordan*, 747 F.2d at 1575, 224 USPQ at 6. The Supreme Court has stated that relitigation of issues is warranted, however, if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in the prior litigation. *Montana*, 440 U.S. at 164 & n. 11, 99 S.Ct. at 979 & n. 11 (1979).

Dr. Freeman does not contend that he did not have a full and fair opportunity to litigate the scope of the reissue claims in the district court proceedings. Indeed, the record before us indicates that he had and fully took advantage of his opportunity to have this issue decided. Additionally, we have no reason to doubt the quality, extensiveness, or fairness of the procedures followed in the district court. To the contrary, the fact that this court on appeal affirmed the district court's conclusions regarding claim interpre-

tation and noninfringement strongly suggests that the district court proceedings were not deficient.

We accordingly conclude that all of the requirements for the application of issue preclusion have been met. We therefore turn our attention to whether the doctrine should be applied here.

*Exceptions to application of issue preclusion*

█ The doctrine of issue preclusion is premised on principles of fairness. *Blonder–Tongue*, 402 U.S. at 349, 91 S.Ct. at 1453. Thus, a court is not without some discretion to decide whether a particular case is appropriate for application of the doctrine. *A.B. Dick*, 713 F.2d at 702, 218 USPQ at 967. Accordingly, under certain circumstances, where all of the requirements of issue preclusion have been met, the doctrine will not be applied. Preclusion will not be effected when the quality or effectiveness of the procedures followed in the two suits differ. For instance, issue preclusion will not be applied if the scope of review of the first action is very narrow. Restatement (Second) of Judgments § 28 comment d (1980).

In this vein, Dr. Freeman infers that this court may not have agreed with the district court on the merits but affirmed that its finding of noninfringement was not clearly erroneous. Dr. Freeman thus implies that review of the district court's infringement decision by this court was narrow thereby implicating the exception to estoppel set out above. However, we note that though this court found the district court's infringement determination was not clearly erroneous, the underlying issue of claim interpretation, being a question of law, was reviewed *de novo*. *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118, 227 USPQ 577, 596 (Fed.Cir.1985) (in banc). Thus, no narrower standard was applied to the district court's determination than was applied in the instant case. The exception to issue preclusion based on such circumstances is thus not implicated.

█ In addition to not applying the doctrine of issue preclusion as outlined above, issue preclusion may be inappropriate in subsequent litigation with others when:

(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issues that were not available in the first action and could likely result in the issue being differently determined.

. . . . .

(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.

Restatement (Second) of Judgments § 29 (1980).

Dr. Freeman argues that the PTO offers procedural opportunities during reexamination that were unavailable to him in the prior litigation, namely, the opportunity to amend his claims "in response to a decision adverse to the patentability of a claim of a patent." under 35 U.S.C. § 305. Thus, according to Dr. Freeman, the availability of amending the reissue claims during reexamination could likely result in the issue sought to be precluded being decided differently. That is, by amending the claims, Dr. Freeman's claims could be interpreted differently to include less than neutral buoyancy IOLs.

Dr. Freeman is quite correct that the amended reexamination claims could be interpreted differently than the reissue claims. That is the point. However, contrary to Dr. Freeman's assertion, his ability to amend the claims during reexamination was not unfettered and according to the statute could not broaden the scope of the claims.

The reexamination statute provides that anyone at any time may request reexamination of any claim of a patent based upon prior art patents and printed publications. 35 U.S.C. § 301, 302. *See* also House Report No. 96–1307, 96th Cong., 2d Sess. (1980), U.S.Code Cong. & Admin.News. The function of reexamination is to increase the reliability of patents thought to be of doubtful validity. *In re Etter,* 756 F.2d 852, 225 USPQ 1 (Fed.Cir.) (in banc), *cert. denied,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985). That function is reflected in 35 U.S.C. § 303

which requires the Commissioner to determine that there is a substantial new question of patentability before a reexamination proceeding can be started. *Etter,* 756 F.2d at 857, 225 USPQ at 5. Thus, the substantial new question of patentability is the focal point of every reexamination.

In *Etter,* this court noted that the patentee may amend the claims during reexamination and that such opportunity distinguishes litigation from reexamination. *Etter,* 756 F.2d at 857, 225 USPQ at 5. *See also In re Yamamoto,* 740 F.2d 1569, 222 USPQ 934 (Fed.Cir.1984). However, the ability of a patentee to amend claims during reexamination must be seen in light of the fundamental purpose of reexamination—the determination of validity in light of a substantial new question of patentability. Thus, amendment of claims during reexamination is limited to amendment in light of prior art raising a substantial new question of patentability. *In re Yamamoto,* 740 F.2d at 1572, 222 USPQ at 936.[5]

Dr. Freeman has never argued that the amendments to the last clause of each of the independent reissue claims were made to distinguish those claims from any prior art. Rather, during reexamination, Dr. Freeman candidly stated that "the claims have been amended in this proceeding consistent with [his] amendments and purpose in filing the reissue application but now with the benefit and knowledge as to how a reader could misconstrue [his] intent." It is clear that the amendments to the last clause of each of the independent reissue claims had nothing to do with a substantial new question of patentability.

Therefore, although we must agree with Dr. Freeman that he had the ability to amend his claims during reexamination which was not available to him in district court, this difference does not rise to the level of a procedural difference precluding application of issue preclusion. The reason is that Dr. Freeman never had the option of amending his claims during reexamination so that they

---

5. Claims may also be amended to comply with 35 U.S.C. § 112 during reexamination. *Etter,*

756 F.2d at 856, 225 USPQ at 4.

would be "consistent with [his] amendments and purpose in filing the reissue application." We therefore hold that application of the doctrine of issue preclusion is not precluded on the basis of any procedural opportunity available in the PTO and not available in the district court.

Dr. Freeman also argues that other compelling circumstances make it appropriate that he be permitted to relitigate the issue of the scope of the reissue claims during reexamination. Specifically, Dr. Freeman argues that because the district court's interpretation of the scope of the claims was "patently incorrect," application of issue preclusion here would be inappropriate. *See* Restatement (Second) of Judgments § 29 comment j (1980) and *Blonder–Tongue*, 402 U.S. at 333–34, 91 S.Ct. at 1445. We are not convinced that the district court's decision was patently incorrect. Indeed, a unanimous panel of this court expressly held that the district court's claim interpretation was not erroneous. Moreover, the Board's disagreement with the district court's determination does not render the district court's determination incorrect.

## CONCLUSION

Because Dr. Freeman had a full and fair opportunity to litigate the identical issue of the meaning of the term "buoyant uplift," an issue actually decided in the district court and essential to the finding of noninfringement in that action, application of issue preclusion is appropriate here. Additionally, because there are no circumstances precluding application of the doctrine, we agree with the Board that the claims are limited to IOLs with at least neutral buoyancy. As the amendments to claims 10, 14, 15, 19, 20, and 21 impermissibly broaden the scope of these claims, we affirm the rejection under 35 U.S.C. § 305. The decision of the Board is affirmed.

***AFFIRMED.***