PROST, Circuit Judge.
In this Winstar-related case, Charter Federal Savings Bank (“Charter”) appeals from the decision of the United States Court of Federal Claims dismissing its complaint on the basis of issue preclusion. See Charter Fed. Sav. Bank v. United States, 54 Fed. Cl. 120 (2002) (“Charter II”). Because we find that issue preclusion does not apply, we reverse the decision of the Court of Federal Claims and remand for further proceedings consistent with this opinion.
Charter acquired several failing thrifts in the 1980s with the expectation that the “supervisory goodwill” resulting from its acquisitions would be amortized over several years. On August 8, 1989, however, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, 103 Stat. 183 (1989) (“FIRREA”), which “over *176 hauled the structure of federal thrift regulation” by, among other things, prohibiting the use of supervisory goodwill as an asset to satisfy capital requirements. See Castle v. United States, 301 F.3d 1328, 1333 (Fed.Cir.2002); United States v. Winstar Corp., 518 U.S. 839, 856, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). FIRREA had a negative impact on Charter’s business, leading it to file suit in the United States District Court for the Western District of Virginia for a declaratory judgment that the government had promised to exempt Charter from the application of any legislation (such as FIRREA) that would interfere with its ability to amortize supervisory goodwill. The district court issued a judgment in Charter’s favor, Charter Fed. Sav. Bank v. Dir., Office of Thrift Supervision, 773 F.Supp. 809 (W.D.Va.1991), but the Fourth Circuit reversed, Charter Fed. Sav. Bank v. Dir., Office of Thrift Supervision, 976 F.2d 203 (4th Cir.1992) (“Charter I”).
Charter then filed the instant lawsuit against the government at the Court of Federal Claims, alleging breach of contract, breach of contract implied-in-law, frustration of contract and commercial impracticability, and unconstitutional taking of property. Specifically, Charter alleged that
Charter and agencies of the United States, entered into valid and binding enforceable contracts in connection with plaintiffs supervisory acquisitions of [three thrifts]---- Defendant materially breached these contracts by unilaterally revoking an essential term of that agreement, namely the right of Charter to treat supervisory goodwill as an asset for regulatory capital purposes that could be amortized over an extended period of time.
The government moved to dismiss Charter’s contract claims for lack of jurisdiction and failure to state a claim, arguing that the Fourth Circuit’s decision in Charter I precluded Charter from relitigating issues of contract formation and breach. The Court of Federal Claims granted the government’s motion to dismiss the contract claims and then dismissed the takings claim for lack of jurisdiction. According to the court:
Charter cannot prove here the obligation or duty arising out of a contract with the Government to provide the regulatory goodwill treatment desired by Charter in the face of contrary future regulations because that very issue was decided against it by the Fourth Circuit: “the FHLBB did not contractually obligate itself (or its successor agencies) to permit Charter to use supervisory goodwill to meet capital requirements in the face of contrary new regulations.” Charter I, 976 F.2d at 204. Thus the essential issue in both cases — whether there was a supervisory goodwill contract containing the promise relied upon by plaintiff — was presented to both courts, and decided by the Fourth Circuit adversely to plaintiff.
Charter II, 54 Fed. Cl. at 128-29.
Charter appeals from this decision, arguing first that issue preclusion does not apply because the issues in Charter I and Charter II are not identical in all respects, and second, in the alternative, that “special circumstances” merit an exception to the doctrine of issue preclusion. We have jurisdiction to consider Charter’s appeal under 28 U.S.C. § 1295(a)(3). We review de novo the decision of the Court of Federal Claims dismissing Charter’s complaint. See Lindsay v. United States, 295 F.3d 1252, 1257 (Fed.Cir.2002).
We first address Charter’s argument that issue preclusion does not apply be *177 cause the issues in Charter I and Charter II are not identical in all respects. Specifically, Charter argues that the Fourth Circuit deliberately avoided the issue of contract formation and instead presumed that a contract existed but did not include the particular promise by the government to exempt Charter from future capital regulations. Thus, according to Charter, the Fourth Circuit never reached the issue raised in Charter II of whether the government promised to insure Charter against any losses caused by a regulatory change such as FIRREA. Charter further supports its position by noting that the Fourth Circuit did not have jurisdiction to decide, and thus did not decide, whether the government promised to insure Charter against financial losses caused by regulatory changes.
We agree with Charter. The Fourth Circuit’s specific holding in Charter I is as follows:
We reverse the district court’s decision on the merits and hold that the FHLBB did not contractually obligate itself (or its successor agencies) to permit Charter to use supervisory goodwill to meet capital requirements in the face of contrary new regulations. Therefore, OTS may enforce FIRREA’s supervisory goodwill requirements against Charter without consequence.
Charter I, 976 F.2d at 204 (emphasis added). In reaching this holding, the court stated that its “review is limited to whether a contract existed between Charter and FHLBB (or its replacement agency, OTS); and, if so, whether the contract provided that Charter could treat supervisory goodwill as capital during the entire specified amortization period. ” Id. at 210 (emphasis added). We interpret this statement to mean that the specific issue considered and decided by the Fourth Circuit was whether the government promised to exempt Charter from any regulatory changes. This issue is not the same one raised by Charter II, which is whether the government promised to pay for any financial losses caused by regulatory changes. Moreover, the Fourth Circuit deliberately did not decide the broader issue of whether there was any kind of contract at all between Charter and the government:
Since our case involves no written expressions of intent to contract nor any written contracts between the parties, we are reluctant to rule that a contract exists. However, we need not decide the contract issue because we find, in any event, that the FHLBB did not promise to exempt Charter from future capital regulations. We can assume, then, without deciding, the existence of an implied contract between FHLBB (or OTS) and Charter and resolve the case on the issue of contract interpretation.
Id. at 211. Thus, the general issue of whether there was a contract between Charter and the government remains open, as does the narrower issue raised by Charter II of whether any such contract included a promise by the government to pay for financial losses caused by a regulatory change.
Certainly there is language in the Fourth Circuit’s opinion that indicates a broader scope to its decision. See, e.g., id. at 204 (“At issue here is whether enforcement of the strict capital requirements of the recently enacted [FIRREA] abrogates prior agreements permitting use of supervisory goodwill as capital.”) and id. at 210 (“OTS may enforce FIRREA’s supervisory goodwill requirements against Charter without consequence.”). Nevertheless, the holding of the Fourth Circuit, twice stated, *178 is quite clear: “We follow these cases and hold that the FHLBB did not promise Charter continued use of supervisory goodwill as regulatory capital in the face of a contrary regulatory scheme.” Id. at 212 (emphasis added); see also id. at 210 (‘We reverse the district court’s decision on the merits and hold that the FHLBB did not contractually obligate itself (or its successor agencies) to permit Charter to use supervisory goodwill to meet capital requirements in the face of contrary new regulations. ” (emphasis added)).
Given the Fourth Circuit’s statement of its holding and its framing of the specific issue it was considering, we conclude that the issue decided by the Fourth Circuit in Charter I is not identical to the issues raised by Charter II. Moreover, to the extent it may be ambiguous what issues were actually decided by the Fourth Circuit, any such ambiguity should be resolved in Charter’s favor. See, e.g., Kearns v. Gen. Motors Corp., 94 F.3d 1553, 1557 (Fed.Cir.1996) (stating that “precedent weighs heavily against denying litigants a day in court unless there is a clear and persuasive basis for that denial”); Eureka Fed. Sav. & Loan Ass’n v. Am. Cas. Co., 873 F.2d 229, 233 (9th Cir.1989) (“Collateral estoppel is inappropriate if there is any doubt as to whether an issue was actually litigated in a prior proceeding.”); Memphis-Shelby County Airport Auth. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.), 783 F.2d 1283, 1289 (5th Cir.1986) (“[I]f reasonable doubt exists as to what was decided in the first action, the doctrine of res judicata should not be applied.”); McNellis v. First Fed. Sav. & Loan Ass’n, 364 F.2d 251, 257 (2d Cir.1966) (“[A] reasonable doubt as to what was decided in the first action should preclude the drastic remedy of foreclosing a party from litigating an essential issue.”). We therefore conclude that issue preclusion does not apply in this case. See Mother’s Rest., Inc. v. Mama’s Pizza, Inc., 723 F.2d 1566 (Fed.Cir.1983) (stating the requirements for issue preclusion). Because we have determined that issue preclusion does not apply, we do not reach Charter’s alternative argument that we should make an exception in this case to the rules of preclusion. Thus, the decision of the Court of Federal Claims dismissing Charter’s complaint is reversed and the case is remanded.