# United States Court of Appeals for the Federal Circuit

---

**STEPHEN SLESINGER, INC.,**
*Appellant,*

**v.**

**DISNEY ENTERPRISES, INC.,**
*Appellee.*

---

2011-1593

(Opposition Nos. 91179064, 91182358, 91183644, 91186026, 91187261, 91188860, 91191230, 91192691, 91194551, 91196019, and 91198046; and Cancellation No. 92046853)

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

---

Decided: December 21, 2012

---

ROGER L. ZISSU, Fross Zelnick Lehrman & Zussu, P.C., of New York, New York, argued for appellant. With him on the brief were DAVID DONAHUE and MICHAEL CHIAPPETTA. Of counsel was RICHARD Z. LEHV.

DANIEL M. PETROCELLI, O'Melveny & Myers LLP, of Los Angeles, California, argued for appellee. With him on

the brief were CASSANDRA L. SETO; and MARK E. MILLER, of San Francisco, California.

---

Before RADER, *Chief Judge*, O'MALLEY, and REYNA, *Circuit Judges*.

Opinion for the court filed by *Chief Judge* RADER.  Dissenting opinion filed by *Circuit Judge* REYNA.

RADER, *Chief Judge*.

The Trademark Trial and Appeal Board ("Board") dismissed with prejudice Stephen Slesinger, Inc.'s ("Slesinger" or "SSI") challenge to the trademark rights related to A.A. Milne's literary work featuring Winnie-the-Pooh and other characters owned by Disney Enterprises, Inc. ("Disney").  During the course of the parties' dispute, Slesinger filed twelve opposition and cancellation proceedings with the Board consolidated under *Stephen Slesinger, Inc. v. Disney Enter., Inc.*, 98 U.S.P.Q.2d 1890 (T.T.A.B. 2011) (the "*Consolidated Proceedings*").  Because the Board properly barred Slesinger's proceeding, granted summary judgment, and dismissed the case due to collateral estoppel, this court affirms.

I.

For decades, Slesinger and Disney have disputed the Winnie-the-Pooh rights in both state and federal courts as well as at the Board.  This case questions the registration of various trademarks derived from the Winnie-the-Pooh works.  Because the Board premises its dismissal on collateral estoppel, this court addresses briefly the background of Slesinger's and Disney's agreements about the marks.

In 1930, A.A. Milne transferred to Stephen Slesinger exclusive merchandising and other rights based on the

Winnie-the-Pooh works in the United States and Canada. In 1961, Slesinger exclusively "assigned, granted, and set over to" Walt Disney Productions the rights in the 1930 agreement with A.A Milne. *Milne ex rel. Coyne v. Slesinger*, No. 2:02-cv-0858, 2009 WL 3140439, at *2 (C.D. Cal. Sept. 25, 2009) ("Seller hereby assigns, grants, and sets over unto the purchaser all of the further rights in and to said work' [sic] which are set forth in Paragraph 3 hereof. . .").

In a 1983 agreement, Slesinger acknowledged its transfer and assignment of "rights it had acquired from A.A. Milne to Disney by agreement dated 14 June 1961." *Id.* The 1983 agreement then revoked the prior agreements and gave Slesinger "all of the rights in the work which were transferred to [Slesinger] in 1930 and amended from time to time." *Id.* In turn, Slesinger transferred its rights back to Disney, as the agreement also provided that Slesinger "assigns, grants, and sets over unto Disney the sole and exclusive right in the United States and Canada to project, exhibit, and broadcast visually and audibly any motion pictures . . ." as well as "various further rights in and to said work, which include merchandise . . ." television, radio, and analogous processes. *Id.*

While the agreement sought to resolve the parties' previous disputes and clarify their contractual arrangements, the parties interpret the 1983 agreement differently. Slesinger contends it retained rights in the Winnie-the-Pooh works, while Disney maintains Slesinger assigned all rights to Disney.

In 1991, before the present litigation began, Slesinger brought an action in Los Angeles Superior Court alleging Disney breached the 1983 agreement. Slesinger claimed Disney's revenue from Winnie-the-Pooh products was not

accurately calculated, meaning that Disney underpaid royalties. Specifically, Slesinger alleged in state court that the 1983 agreement gave Disney valuable rights "in exchange for a share of the receipts from exploitation of the Pooh characters." *Id.* at *4. In the state court proceedings, Slesinger acknowledged that the 1983 agreement "regranted, licensed and assigned all rights acquired rights [sic] to Disney." *Id.* Slesinger further explained that "the grant of all 'further rights' in and to the Pooh Characters . . . is a catch-all designed to ensure that Slesinger was granting . . . all of the additional commercial exploitation rights Slesinger acquired that are not specifically mentioned in the 1983 Agreement." *Id.* The California state court ultimately dismissed Slesinger's claim, and the California Court of Appeals affirmed.

Meanwhile, the parties' dispute over royalties proceeded in the Central District of California. In October 2006, Slesinger amended its district court claim to allege that Disney's exploitation of the Winnie-the-Pooh characters infringed Slesinger's trademarks and copyrights. Disney moved to dismiss the claim because Slesinger had admitted in state court that Disney's uses of the Winnie-the-Pooh characters were authorized. Disney also contended that Slesinger granted all of the rights it had in the Winnie-the-Pooh characters to Disney and that Slesinger retained no rights which Disney could infringe.

In 2009, the district court considered the parties' cross motions for summary judgment based on the 1983 agreement and addressed the agreement's scope, judicial estoppel, and California's Business and Professions Code. The district court noted the parties' actions indicated the Winnie-the-Pooh rights were transferred to Disney in the 1983 agreement. Between 1983 and 2006, Disney registered at least fifteen trademarks. In 2004, Disney registered copyrights in forty-five works and renewed

copyright registrations for another fourteen. In contrast, Slesinger did not attempt to perfect or register trademarks or copyrights before asserting its district court claims. The district court further noted that Slesinger never objected to those registrations until 2006, when the state court dismissed Slesinger's claims for royalty agreement breach. Accordingly, the California district court based its judgment against Slesinger on "the conduct of the parties over the nearly 50 years of their relationship." *Id.*

The district court also addressed Slesinger's arguments that it did not relinquish all the rights it received from A.A. Milne to Disney. However, because Slesinger could not specifically identify any retained right, the court determined that the contracts did not permit any retention of rights. Thus, upon its review of the 1983 agreement, the court found that Slesinger granted its acquired rights to Disney. In sum, given the parties' conduct, and the "clear terms" of the agreements, the district court determined that Slesinger "transferred all of its rights in the Pooh works to Disney, and may not now claim infringement of any retained rights." *Id.*

Applying the doctrine of judicial estoppel, the district court found Slesinger's arguments "inconsistent with statements made and positions taken by SSI in the state court litigation." *Id.* at *5. In state court, Slesinger "has insisted that Disney's uses of the works were derived from the SSI grants of 'all' rights to sound, word, picture representation, television, any representational device, similar or allied devices, videocassettes, promotion and advertising in all media, exploitation and licensing in all media." *Id.* at *4. Thus, the district court based its finding of estoppel on Slesinger's inconsistent positions. *Id.* at *5 ("SSI's conduct demonstrates a blatant effort to salvage

its lawsuit against Disney by taking an [sic] taking entirely inapposite and inconsistent posture in this case.").

This dispute at the Board began in December 2006. Slesinger now attempts to cancel Disney's applications to register the marks POOH, WINNIE THE POOH, CLASSIC POOH, MY FRIENDS TIGGER & POOH, and other marks comprising the names or images of "Pooh" and related fictional characters. Slesinger claims the agreement with Disney is a license, which does not grant Disney the right to register the marks. Disney maintains the agreement assigned all the Winnie-the-Pooh rights to Disney and filed a motion to dismiss. Treating the motion as one for summary judgment, the Board found that collateral estoppel barred Slesinger's claims and granted Disney's motion. The Board's decision relied on the earlier district court order in *Milne ex rel. Coyne v. Slesinger*, No. 2:02-cv-0858 (C.D. Cal. Sept. 25, 2009). Accordingly, this court therefore considers the Board's application of collateral estoppel based on the Central District of California's ruling. This court has jurisdiction over Slesinger's appeal pursuant to 28 U.S.C. § 1295(a)(4)(B) and 15 U.S.C. § 1071(a)(1).

## II.

This court reviews the Board's decision to grant summary judgment without deference. *Odom's Tenn. Pride Sausage, Inc. v. FF Acquisition, LLC*, 600 F.3d 1343, 1345 (Fed. Cir. 2010). The doctrine of issue preclusion, or collateral estoppel, protects the finality of judgments by "preclud[ing] relitigation in a second suit of issues actually litigated and determined in the first suit." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994) (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 326 (1955)). Collateral estoppel requires four elements: (1) a prior action presents an identical issue; (2) the prior

action actually litigated and adjudged that issue; (3) the judgment in that prior action necessarily required determination of the identical issue; and (4) the prior action featured full representation of the estopped party. *See Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (citing *Freeman*, 30 F.3d at 1465).

Slesinger concedes that this case satisfies the first and fourth factors. Indeed, the Central District of California litigated the identical issue, the scope of the 1983 agreement, and Slesinger was fully represented.

On the second factor, Slesinger contends that the district court did not properly consider the critical issue on the scope of the 1983 agreement. The record shows that the district court extensively analyzed the scope of the 1983 agreement. For example, Slesinger specifically presented this identical issue as its Second Claim for Relief. Indeed Slesinger maintained in that action that the 1983 agreement was a license rather than an assignment. Likewise, the parties' district court briefing extensively addressed the agreement's scope as an assignment or a license. Accordingly, the record shows that the district court litigated and decided the identical issue.

Slesinger, however, argues that the district court did not specifically declare that Slesinger "has no rights *at all*", thus implying some rights may survive the 1983 agreement. To bolster this contention, Slesinger argues the district court's ruling, which uses the term "retained rights," implies Slesinger licensed its rights to Disney. Also, it claims the district court's "broad" conclusion did not definitively resolve the license or assignment issue. Slesinger notes the district court did not use the term "assignment" and its reference to the "grant" or "transfer" supports Slesinger's contention the 1983 agreement was a license because such terms are associated with licensing.

To the contrary, the Board properly addressed these points and dismissed them as meritless. In the words of the Board, "[t]he clear wording of the district court's order does not support SSI's contention that the decision was focused only on whether a particular array of uses by Disney of the POOH works was authorized." *Consolidated Proceedings*, 98 U.S.P.Q.2d at 1897.

From this court's perspective, the Board's determination accurately tracks the district court's holding that the 1983 agreement represented "a transfer from SSI to Disney of *all* of SSI's interests in the Pooh characters," *Milne*, 2009 WL 3140439 at *4 (emphasis in original), and that "under the clear terms of the parties' agreements, SSI transferred all of its rights in the Pooh works to Disney, and may not now claim infringement of any retained rights." *Id.* Moreover, the "unambiguous nature of the contracts is strongly supported by the conduct of the parties over the nearly 50 years of their relationship," as both parties treated the agreements as constituting a complete assignment of Slesinger's rights to Disney. *Id.* Thus, the record shows that the district court did not find that Slesinger "retained" some rights. *See Freeman*, 30 F.3d at 1466 ("[T]he requirement that the issue have been actually decided is generally satisfied if the parties to the original action disputed the issue and the trier of fact decided it.") (citing *Mother's Rest., Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed. Cir. 1983)).

The record shows the district court concluded that Slesinger completely granted all its rights to Disney as an assignment. *See, e.g.*, *In re Computer Eng'g Assocs.*, 337 F.3d 38, 46 (1st Cir. 2003) (assignment where party divests itself of "all right, interest, and control in the property"); *In re Apex Oil Co.*, 975 F.2d 1365, 1369 (8th Cir. 1992) ("assignment" defined "as a transfer by the assignor of all rights in the property"); 3 J. Thomas

McCarthy, *McCarthy on Trademarks & Unfair Competition* § 18:1 (4th ed. 2012) (assignment is "an outright sale of all rights in . . . [a] mark," whereas license "is a limited permit to another to use the mark"). With such a clear explanation that Slesinger conveyed all rights completely to Disney, it is immaterial that the district court used the terms "transfer" and "grant" rather than "assignment." Moreover, it is the court's ultimate "*judgment* that matters," not the language used to discuss the court's rulings. *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (emphasis in original); *see also Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992) ("When the issue for which preclusion is sought is the only rational one the fact finder could have found, then that issue is considered foreclosed, even if no explicit finding of that issue has been made."); 18 Lawrence B. Solum, *Moore's Federal Practice – Civil* § 132.03[3][e] (Matthew Bender 3d ed.) ("An issue that was necessarily implicit in a larger determination is given issue preclusive effect. An issue that is distinctly presented in the pleadings and necessarily resolved may be reflected in the decision that includes that point, although it may not be expressly mentioned in the decision.").

Finally, after determining that Slesinger had no ownership interest in the Pooh rights, the district court concluded that Slesinger "fully adjudicated all claims and counterclaims" and held "all of [Slesinger's] Counterclaims are dismissed on the merits and with prejudice." *Milne*, 2009 WL 3140439 at *6. The district court unequivocally decided that Slesinger was not entitled to its requested relief. Therefore, the record shows that the district court ruled on and denied Slesinger's specific request for an order directing the Board to correct Disney's Pooh-related trademark registrations to reflect Slesinger's name.

The third element of the estoppel formula prevents "the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue." *Mother's Rest.*, 723 F.2d at 1571. In this instance, the district court's ruling is neither incidental nor collateral. Rather it directly addressed Slesinger's ownership interest in the Pooh rights. The record shows that the evaluation of these rights was clearly an essential element of the judgment. Indeed the district court had to determine this issue before deciding whether Disney's uses of the Winnie-the-Pooh rights were infringing. Likewise, it was essential to first determine whether Slesinger had any ownership rights in the marks before considering Slesinger's request to correct Disney's trademark registrations to Slesinger's name.

Accordingly, the Board correctly applied collateral estoppel to prevent Slesinger from asserting a claim that its 1983 grant of rights to Disney was a license as opposed to an assignment.

## AFFIRMED

### COSTS

Each party shall bear its own costs.

# United States Court of Appeals
# for the Federal Circuit

---

**STEPHEN SLESINGER, INC.,**
*Appellant,*

**v.**

**DISNEY ENTERPRISES, INC.,**
*Appellee.*

---

2011-1593

(Opposition Nos. 91179064, 91182358, 91183644,
91186026, 91187261, 91188860, 91191230, 91192691,
91194551, 91196019, and 91198046; and
Cancellation No. 92046853)

---

Appeal from the United States Patent and Trademark
Office, Trademark Trial and Appeal Board.

---

REYNA, *Circuit Judge*, dissenting.

The issue before us is whether the district court decided the ownership of the Winnie-the-Pooh trademarks. Because I believe the district court did not decide ownership of the Pooh trademarks, and because I believe that a decision on ownership was not necessary to the district court's decision concerning trademark infringement, I respectfully dissent.

## I. COLLATERAL ESTOPPEL

Collateral estoppel, often called "issue preclusion," bars relitigation in a second action of an issue litigated and decided in a prior action. Because preclusion may forever bar meritorious claims and negate significant legal rights, courts must ensure that the circumstances for preclusion are "certain to every intent." *Mayer/Berkshire Corp. v. Berkshire Fashions, Inc.*, 424 F.3d 1229, 1234 (Fed. Cir. 2005) (citing *Russell v. Place,* 94 U.S. 606, 610 (1876)). Precedent weighs against denying litigants a day in court unless there is a clear and persuasive basis for that denial. If there exists a reasonable doubt as to whether an issue was actually decided in the first action, preclusion should not apply in the subsequent action. *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1557 (Fed. Cir. 1996); *McNellis v. First Fed. Sav. & Loan Ass'n of Rochester, New York*, 364 F.2d 251, 257 (2d Cir. 1966) ("[A] reasonable doubt as to what was decided in the first action should preclude the drastic remedy of foreclosing a party from litigating an essential issue." (internal citation omitted)). Guided by these principles, we resolve ambiguities in what issues were actually decided in a prior proceeding in favor of the party seeking to prevent application of preclusion. *Charter Fed. Sav. Bank v. United States*, 87 F. App'x 175, 178 (Fed. Cir. 2004) (nonprecedential).

The Supreme Court summarized the requirements of issue preclusion in *Montana v. United States,* 440 U.S. 147, 153-55 (1979). Issue preclusion requires (1) identity of an issue in a prior proceeding, (2) that the identical issue was actually litigated and decided, (3) that determination of the issue was necessary to the judgment in the prior proceeding, and (4) that the party defending against preclusion had a full and fair opportunity to litigate the issue in the prior proceeding. *Montana,* 440 U.S. at 153–

55.  The burden is on the party seeking preclusion to show "that the same issue was 'actually and necessarily determined' in the prior proceeding." *Connors v. Tanoma Min. Co., Inc.*, 953 F.2d 682, 684-85 (D.C. Cir. 1992).

We owe no deference to a determination by the Trademark Trial and Appeal Board ("TTAB") on preclusion.  *In re Trans Texas Holdings Corp.*, 498 F.3d 1290, 1296 (Fed. Cir. 2007).  As it has been observed by other courts, the correctness of the earlier decision is not an issue, and it is irrelevant to the application of the estoppel.  *Westwood Chem., Inc. v. U. S.*, 525 F.2d 1367, 1375 (Ct. Cl. 1975).  It is therefore inappropriate to consider whether the earlier decision was correct; the law "does not authorize unbridled excursions into the record of the earlier trial before applying the estoppel of the previous judgment."  *See Gammino v. Sprint Commnc'ns. Co. L.P.*, No. 10-2493, 2011 WL 3240830 (E.D. Pa. July 29, 2011).

In view of the foregoing, I believe the TTAB erred on two distinct grounds when it determined that the trademark ownership issue was precluded.  First, the district court did not actually decide the ownership issue.  Second, resolution of the ownership issue was not essential or necessary for the district court's decision on non-infringement.

### A.  A REASONABLE DOUBT

The basic question before the district court was whether Disney had infringed the Pooh trademarks. Disney asserted as a defense to infringement that it had a legal right to use the Pooh trademarks based on a transfer of the marks from Slesinger to Disney.  The court was asked to resolve whether the transfer effected a license (for use), or an assignment (sale) of the trademarks.  The parties briefed the license-assignment issue, so there is no question as to whether the license-assignment issue was

litigated. But there exists reasonable doubt whether the district court actually decided the issue. The court does not explicitly state in clear, plain language whether the grant of rights, *i.e.*, the transfer, was a license or an assignment. In relevant part, the district court's opinion states,

> Disney puts forth two main contentions in its Motion: First, that *Slesinger granted to Disney all of the rights it had in the Pooh characters*, and *retained no rights which Disney could infringe*, and second, that Slesinger's counterclaims are inconsistent with its earlier position in the Superior Court action that Disney's uses of the Pooh characters were authorized and royalty-producing. *The Court agrees with both propositions.*

*Milne ex rel. Coyne v. Slesinger*, 2:02CV08508-FMC-PLAX, 2009 WL 3140439 at *1 (C.D. Cal. Sept. 25, 2009) (emphases added). The district court's use of the phrase "granted to Disney all of the rights" could indicate an assignment, but it could also indicate a license to use, *i.e.*, to promote, advertise and otherwise exploit the commercial value of the trademarks. *See, e.g.*, *In re Polar Music Int'l AB*, 714 F.2d 1567, 1569 (Fed. Cir. 1983) ("Subject to certain terms and conditions, Atlantic is *granted the right to use the mark* 'ABBA' and likenesses of the group in connection with the promotion, advertising, distribution, exploitation, and sale of records embodying the master recordings made by appellant." (emphases added)). Similarly, the district court's conclusion that Slesinger "retained no rights which Disney could infringe" is equally consistent with either a license or an assignment. The court's recognition that "Disney's uses of the Pooh characters were authorized and royalty-producing" can reasonably refer to an assignment, but the words chosen by the court are more consistent with a license given the implied

extension of authority and the obligation for continued royalty payments for use of the Pooh trademarks.

Indeed, the district court's opinion appears to suggest that Slesinger retained some rights to the Pooh trademarks, but that any rights retained were insufficient to support an infringement action. *Milne*, 2009 WL 3140439 at *4 ("Slesinger transferred all of its rights in the Pooh works to Disney, and may not now claim infringement of any retained rights."). This scenario is as suggestive of a license as it is of an assignment. *See Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1076 (5th Cir. 1997) ("A *license* to use a mark is a *transfer* of limited rights, less than the whole interest which might have been transferred." (emphases added; internal quotation marks omitted)); *Consol. Foods Corp. v. United States*, 569 F.2d 436, 437 (7th Cir. 1978) ("This issue of whether a *transfer* of the use of a trademark is a sale or a license for tax purposes is a thorny one . . . ." (emphasis added)). It follows that a finding that some or all rights were transferred is not itself determinative of ownership.

The district court's failure to definitively and expressly state whether the transfer was a license or assignment is striking and illuminating. The district court's resort to ambiguity on the issue is significant given that the parties fully briefed the issue. One explanation could be that the district court found it unnecessary to actually decide the issue as long as it focused on whether Disney had a legal right to use the Pooh trademarks. In any event, there exits reasonable doubt whether the court actually decided that the transfer was accomplished via an assignment, *i.e.*, by outright sale. On that basis alone, collateral estoppel should not apply.

## B. Ownership Not Essential

For operation of preclusion, an issue must also be necessary to the judgment in the previous action. *Mother's Rest., Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1571 (Fed. Cir. 1983) ("In order to give preclusive effect to a particular finding in a prior case, that finding must have been necessary to the judgment rendered in the previous action."). The relevant question here is whether the district court was necessarily required to decide whether the transfer of the Pooh trademarks was an assignment in order for the court to resolve the issue of trademark infringement. *See id.* The answer is no.

Disney argues that in order for the district court to evaluate whether Disney's use of the Pooh trademarks was infringing, the court first had to determine whether Slesinger or Disney owned the rights. This is incorrect. As happened precisely in this case, an effective defense to a claim of trademark infringement can be made upon a showing of authorized use under a license. *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 242 (1927) ("If a licensee be sued, he can escape liability to the patentee for the use of his invention by showing that the use is within his license."); *see also* 3 McCarthy on Trademarks and Unfair Competition § 18:40 (4th ed. 2011) ("Every license carries with it a waiver of the right of the trademark owner to sue for infringement arising out of acts that fall within the scope of the license."). Whether Disney was authorized to use the Pooh trademarks does not solely depend on whether Slesinger or Disney owned the marks, because Disney could have been authorized to use the Pooh trademarks under a license.

The majority acknowledges that the district court never directly addresses the license-assignment issue, and the majority cites authorities discussing application of

preclusion where no explicit findings were made in the prior action. Those authorities, however, require that the precluded issue be "the only rational one the fact finder could have found," *Clark*, 966 F.2d at 1321; that the issue was "necessarily implicit in a larger determination," Moore's Federal Practice – Civil § 132.03[3][e]; and that the issue was "necessarily resolved," *id.* That is not the case here. Here, ownership of the Pooh trademarks was not the only rational basis on which a fact finder could find non-infringement. An equally rational basis is that Disney was an authorized user under a license. It follows that collateral estoppel cannot apply.

Because the court could have disposed of Slesinger's infringement claims solely on the basis that Disney was authorized to use the Pooh trademarks, it is clear that a decision on ownership of the rights was not essential to the court's judgment on infringement. This alone is sufficient to preclude the application of collateral estoppel.

Based on the foregoing, I believe the TTAB erred in precluding Slesinger from disputing the ownership of the Pooh trademarks. I therefore respectfully dissent.