# United States Court of Appeals for the Federal Circuit

---

**LAGUNA HERMOSA CORPORATION,**
**(DOING BUSINESS AS RANCHO MONTICELLO RESORT)**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2011-5062

---

Appeal from the United States Court of Federal Claims in case no. 10-CV-281, Judge Lynn J. Bush.

---

Decided: February 6, 2012

---

THOMAS C. NAGLE, Law Offices of Thomas C. Nagle, of Walnut Creek, California, argued for the plaintiff-appellant.

LANE M. MCFADDEN, Attorney, Environment and Natural Resources Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on with the brief was IGNACIA S. MORENO, Assistant Attorney General.

---

Before PROST, CLEVENGER, and REYNA, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

Laguna Hermosa, a concessionaire at the Lake Berryessa recreation area, appeals from the final decision of the United States Court of Federal Claims dismissing its complaint under Rule 12(b)(6) of the Rules of the Court of Federal Claims. Because we find no error in the trial court's decision, we affirm.

I

The Lake Berryessa recreation area was created in 1957 when the Bureau of Reclamation of the United States Department of the Interior ("the Bureau") built Monticello Dam on Putah Creek in northern California. The United States owns the recreation area. In 1958, the United States entered into a management agreement with Napa County, California, under which the county would administer Lake Berryessa for recreational use. Napa County, in turn, entered into contracts with seven concessionaires to develop and operate recreational facilities. As one of the seven, Laguna Hermosa entered into a concessionaire agreement with Napa County for the construction and operation of a recreational facility at Lake Berryessa. In 1975, the Bureau took over the management of recreation at the lake, including administration of concessionaire agreements. The concessionaire agreement with Laguna Hermosa was extended and modified a number of times. During the term of the agreement, Laguna Hermosa made various improvements to the land, including reconfiguration of the topology to accommodate a resort, boat launch ramps, drainage structures, access roads, a sewage system, retaining walls, a water purification plant, and parking lots.

One year before the concessionaire agreement was set to expire, Laguna Hermosa and three other Lake Berryessa concessionaires brought suit in the Court of Federal Claims pursuant to the bid protest provisions of the Tucker Act (28 U.S.C. § 1491(b)(1)-(4)) and challenged the Bureau's plan for soliciting new concessionaire bids. The four concessionaires argued that the Bureau had to require new concessionaires to provide compensation for all facilities built on the lakefront. *Frazier v. United States*, 79 Fed. Cl. 148 (2007), *aff'd*, 301 F. App'x 974 (Fed. Cir. 2008). The Court of Federal Claims held that Public Law 96-375, 94 Stat. 1505, 1507 (1980), obliged the outgoing concessionaires to either remove or abandon the facilities, unless the United States required that particular facilities remain, in which case concessionaires would receive compensation only for those selected facilities. *Frazier*, 79 Fed. Cl. at 161. This court affirmed the grant of judgment on the administrative record without opinion. *Frazier v. United States*, 301 F. App'x 974 (Fed. Cir. 2008).

Laguna Hermosa's concessionaire agreement expired on June 15, 2008. Upon expiration of the concessionaire agreement, Laguna Hermosa did not scrap or otherwise remove the facilities, but instead left them behind intact. The concessionaire insists that it did not intend to abandon the facilities and that it communicated this intent to the Bureau on several occasions. However, Laguna Hermosa does not allege that the United States commanded or otherwise influenced its decision to leave the facilities behind.

Two years after Laguna Hermosa's concessionaire agreement expired, the Bureau entered into a new concessionaire agreement, covering the area that Laguna Hermosa once operated, with Pensus Lake Berryessa Properties ("Pensus"). Laguna Hermosa alleges that since its concessionaire agreement expired, the United States,

Pensus, or both have used some of the facilities left behind on the property. Neither the United States nor Pensus have offered to pay Laguna Hermosa for any of the facilities currently affixed to the site.

On May 10, 2010, Laguna Hermosa filed a complaint against the United States in the Court of Federal Claims. On August 30, 2010, Laguna Hermosa filed an amended complaint and asserted two causes of action. First, Laguna Hermosa asserted an inverse condemnation claim under the Fifth Amendment's taking clause. Laguna Hermosa is not appealing the court's dismissal of that cause of action, so we will not address it further. Second, Laguna Hermosa sought compensation from the United States for the facilities which were allegedly retained and used by the Bureau or by Pensus on the theory that the United States should be found to have retrospectively "required" their retention under section 5(b) of Public Law 96-375, and is therefore obligated to pay Laguna Hermosa their fair value.

On September 16, 2010, the United States filed a motion to dismiss the complaint under RCFC 12(b)(6) for failure to state a claim upon which relief could be granted. On January 28, 2011, the Court of Federal Claims granted the motion and ordered that the complaint be dismissed with prejudice. The trial court dismissed Laguna Hermosa's claims for two reasons: (1) issue preclusion foreclosed Laguna Hermosa's claims, and (2) in any event, *Frazier*'s statutory analysis foreclosed the viability of those claims because Laguna Hermosa had no cognizable property interest in the facilities after expiration of the lease and thus no right to fair value compensation under Public Law 96-375. The court entered judgment against Laguna Hermosa on January 31, 2011, and Laguna Hermosa filed a timely notice of appeal on March 8, 2011. As an appeal from a final judgment of the

Court of Federal Claims, this court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II

This court reviews the trial court's application of the doctrine of issue preclusion *de novo*. *Shell Petroleum v. United States*, 319 F.3d 1334, 1338 (Fed. Cir. 2003). This court also reviews *de novo* a dismissal for failure to state a claim pursuant to Rule 12(b)(6) of the Court of Federal Claims, just as it does dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009). A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy, *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002), or do not elevate a claim for relief to the realm of plausibility. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565-71 (2007)). In deciding a motion to dismiss, this court must take Laguna Hermosa's factual allegations as true and construe those facts in the light most favorable to it. *See Iqbal*, 129 S.Ct. at 1949.

## III

Laguna Hermosa argues that the trial court committed two errors. First, Laguna Hermosa argues that the trial court incorrectly held that issue preclusion forecloses its claim for relief under Public Law 96-375. Second, Laguna Hermosa argues that the trial court mistakenly held that its second cause of action fails to state a claim, because the United States should be found to have "required" the retention of facilities under section 5(b) of Public Law 96-375 when, as pled, the government retains and uses those facilities, even if the government did not expressly and affirmatively state that they were to remain on the site.

## A

Turning to Laguna Hermosa's first argument, the doctrine of issue preclusion, or collateral estoppel, protects the finality of judgments by "preclud[ing] relitigation in a second suit of claims actually litigated and determined in the first suit." *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994) (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 326 (1955)). Issue preclusion bars a cause of action when four conditions are met:

> (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the plaintiff had a full and fair opportunity to litigate the issue in the first action.

*Freeman*, 30 F.3d at 1465 (citing *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 702 (Fed. Cir. 1983)).

As to the first condition, we hold that the trial court erred in concluding that the issues in this case are identical to those in *Frazier*. In this suit, the court must interpret the word "require" in the statute, whereas this analysis was unnecessary in *Frazier*. *Frazier*'s analysis was limited to whether "the option of the Bureau to require permanent facilities to remain on site includes the discretion to retain all or some or none of the permanent facilities at each concession." *Frazier*, 79 Fed.Cl. at 161. As such, the *Frazier* court did not decide whether retention and use of permanent facilities after expiration of the lease was sufficient action to trigger the compensation provision of Public Law 96-375. Since this condition is not satisfied, issue preclusion does not apply; however, the court will briefly address why the other conditions are also not satisfied.

As to the second condition, "the requirement that the issue have been actually decided is generally satisfied if the parties to the original action disputed the issue and the trier of fact decided it." *Freeman*, 30 F.3d at 1466 (citing *Mother's Rest., Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed. Cir. 1983)). In *Frazier*, the parties did not dispute the meaning of "require" as used in section 5(b). Instead, the parties and the *Frazier* court presumed that the United States would require at least some permanent facilities to remain at the lake. As to the third condition, "[t]he purpose of this requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation." *Freeman*, 30 F.3d at 1466 (citing *Mother's.*, 723 F.2d at 1571). As stated above, the *Frazier* court did not reach this issue at all because the court presumed that the United States would require at least some permanent facilities to remain at the lake. As to the fourth condition, the parties did not have a full and fair opportunity to litigate this issue, which was not ripe at the time of the *Frazier* suit since the lease had not yet expired, so this condition is also not satisfied.

Given that none of the four conditions are satisfied, issue preclusion does not apply to bar Laguna Hermosa's cause of action here. However, as discussed below, the court correctly dismissed the complaint for failure to state a claim under Rule 12(b)(6), so this error is harmless.

## B

Next, Laguna Hermosa argues that the trial court mistakenly held that its second cause of action fails to state a claim, because the United States should be found to have "required" the retention of facilities under section 5(b) of Public Law 96-375 when, as pled, the government retains and uses those facilities. "[T]he starting point in

every case involving construction of a statute is the language itself." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472 (1977) (quotation marks omitted). Therefore, the starting point of our analysis is the text of section 5(b) of Public Law 96-375, which states:

> Notwithstanding any other laws to the contrary, all permanent facilities placed by the concessionaires in the seven resorts at Lake Berryessa shall be considered the property of the respective current concessionaires. Further, any permanent additions or modifications to these facilities remain the property of said concessionaires: Provided, That at the option of the Secretary of the Interior, the United States may require that the permanent facilities mentioned herein not be removed from the concession areas, and instead, pay fair value for the permanent facilities or, if a new concessionaire assumes operation of the concession, require that concessionaire to pay fair value for the permanent facilities to the existing concessionaire.

Act of Oct. 3, 1980, Pub. L. No. 96-375, § 5(b), 94 Stat. 1505, 1507 (1980). Although Laguna Hermosa contends that the United States should be deemed to have "required" the retention of facilities when the government retains and uses those facilities, this contention is inconsistent with the plain language of the statute. Here, the key issue is the meaning of the word "require," in that if the United States can be found to have required the facilities to remain, then Laguna Hermosa's complaint survives the Rule 12(b)(6) motion. This court does not think that Congress intended the word "require" to be interpreted as Laguna Hermosa suggests. The plain language of the statute indicates that there must be some affirmative action by the government before the duty to

compensate is triggered. This is consistent with the common meaning of the word "require." *See, e.g.*, Oxford English Dictionary 681 (2d ed. 1989) (defining "require" as "to ask or request (one) for something"); American Heritage Dictionary of the English Language 1482 (4th ed. 2004) (defining "require" as "to call for as obligatory or appropriate"); Merriam-Webster's Collegiate Dictionary 995 (10th ed. 2001) (defining "require" as "to claim or ask for by right and authority"). This interpretation is also consistent with the definition of the word "required" as interpreted in other contexts by this court. *See, e.g.*, *Intel Corp v. VIA Tech., Inc.*, 319 F.3d 1357, 1362 (Fed. Cir. 2003) (holding in a contract dispute that "the plain meaning of the word 'required' is the opposite of that of the word 'optional'").

The statute vests title to permanent facilities placed on the concession in the concessionaire. Unless the Secretary expressly directs that a particular facility must remain on the concession, the concessionaire is free to remove the facility in whole or part. Indeed, if the Secretary expresses no interest in a particular facility remaining on the concession for the benefit of the United States or a subsequent concessionaire, the owner knows it is free to deal with the facility as it wishes. Laguna Hermosa's theory that the government must be "deemed" to have required facilities to remain on the concession overlooks the clear option given to the Secretary to express disinterest in the facilities, thereby granting the concessionaire the option of removing or dismantling the facility, or leaving it intact. Had Congress meant the statute to be read as Laguna Hermosa posits, it could easily have said that (a) all permanent facilities placed on the concession are the property of the concessionaire and (b) the concessionaire shall be paid fair value for any permanent facility remaining on the concession at the end of a concession-

aire's contract that is used by the government or the subsequent concessionaire. Our task is to interpret the statute as written, as we have, not to rewrite it. Thus, given that the United States has merely retained and used the facilities, the government cannot be found to have "required" the concessionaire to leave them, and Laguna Hermosa's complaint fails to state a claim upon which relief may be granted.

Even if the court were to find the language of the statute ambiguous, the legislative history supports our interpretation of the statute as requiring some affirmative action by the United States before its duty to compensate under Public Law 96-375 is triggered. *See Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980) ("[O]ur obligation is to take statutes as we find them, guided, if ambiguity appears, by the legislative history and statutory purpose."); *Nutrition 21 v. United States*, 930 F.2d 862, 865 (Fed. Cir. 1991) ("Where . . . the words of a statute are not expressly defined, and do not fairly admit of a plain, non-ambiguous meaning, resort to the legislative history for clarification is justified."). Contrary to Laguna Hermosa's contentions, the scant legislative history shows that the statute gives the Secretary of the Interior authority to enter into new concessionaire agreements at Lake Berryessa and protects the existing concessionaires through the statutory language contained in Public Law 96-375. *See* 126 Cong. Rec. H1867 (daily ed. Feb. 5, 1980) (statement of Reps. Clausen and Lujan, repeating the statutory language by saying "[w]e simply intend that if the United States wants the facilities to stay when the concessionaire leaves, the Secretary will pay the concessionaire fair value for the permanent facilities"); S. Rep. No. 96-890, at 2 (1980); H.R. Rep. No. 96-710, at 6 (1979). The legislative history does not indicate Congress's intent to com-

pensate concessionaires absent a declaration by the government that a facility must remain.

Finally, we note that the statute involved in this case, section 5(b) of Public Law 96-375, is of extremely limited reach. Only the "permanent facilities mentioned herein" are affected by the statute. Thus, by its terms, the statute only addresses the balance of rights between the seven concessionaires at Lake Berryessa at the time of enactment and the Secretary, not other concessionaires at other locations.

Thus, although the trial court erred in its issue preclusion analysis, we agree with the trial court's conclusion that Laguna Hermosa's complaint fails to state a claim under Rule 12(b)(6).

For the reasons stated herein, the judgment of the Court of Federal Claims is affirmed.

## AFFIRMED

### COSTS

Each party shall bear its own costs.