ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| DynCorp International LLC | )    ASBCA No. 61274 |
| | ) |
| Under Contract No. FA8617-12-C-6208 | ) |

APPEARANCES FOR THE APPELLANT:         Gregory S. Jacobs, Esq.
                                       Erin L. Felix, Esq.
                                         Polsinelli PC
                                         Washington, DC

APPEARANCES FOR THE GOVERNMENT:        Jeffrey P. Hildebrant, Esq.
                                         Air Force Deputy Chief Trial Attorney
                                       Jason R. Smith, Esq.
                                       Lt Col Byron Shibata, USAF
                                       Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE SWEET ON THE
GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Appellant DynCorp International LLC (DI) appeals the deemed denial of its request for an equitable adjustment. The government has moved for partial summary judgment, arguing that our decision in *DynCorp International, LLC*, ASBCA No. 59244, 17-1 BCA ¶ 36,653 (*DynCorp* I) issued under the above-captioned contract precludes the re-litigation of some issues in this appeal under the doctrine of collateral estoppel. Familiarity with the facts of *DynCorp* I is presumed. The motion is denied.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. The T-6A/B is an aircraft used by the United States Air Force (USAF) and the United States Navy for pilot training. It is stationed at multiple sites around the United States. (Compl. ¶ 4)

2. On 27 December 2010, the USAF issued Solicitation No. FA8617-11-R-6208 (6208 RFP) for the new Joint Primary Aircraft Training System (JPATS) T-6A/B Contractor Operated and Maintained Base Supply (COMBS) (R4, tab 199-200). The 6208 RFP contained numerous contract line item numbers (CLINs), including the 3XXX CLINs. The 3XXX CLINs were for all maintenance, repairs, overhauls and replenishments/replacements of the T-6A/B at various sites. The 6208 RFP indicated that the government would pay on a fixed-rate cost per flight hour (CPFH) basis for a variable number of flight hours. (*Id.* at 55-81) CPFH pricing differed among the various sites due

to several factors, including the number of aircraft, total projected flight hours, and aircraft age (compl. ¶ 10).

3. According to DI, offerors required historical information regarding the consumption of aircraft parts and components at each site in order to propose site-specific CPFH prices (app. opp'n, ex. 1, ¶ 4). As a result, the USAF provided historical consumption data in the bidder's library (R4, tabs 2-45). DI alleges that the information in the bidder's library was inaccurate for the first quarter of 2010 because parts for the T-6B from the Whiting Field site were incorrectly coded as being issued from the Pensacola site (compl. ¶ 26; app. opp'n, ex. 1, ¶ 6).

4. DI submitted a proposal. It alleges that, due to the error in the bidder's library, its proposed pricing for the Whiting Field site was lower than it would have been had the USAF provided the correct data (app. opp'n, ex. 1, ¶ 7).

5. The USAF awarded Contract No. FA8617-12-C-6208 (COMBS contract) to DI based upon the 6208 RFP (R4, tab 73).

6. After performance began, DI alleges it discovered the error in the bidder's library (compl. ¶ 26-34; app. opp'n, ex. 1, ¶ 6).

7. DI filed a claim on 12 May 2015. The contracting officer did not issue a decision on that claim, such that it is deemed denied. This appeal followed. (Compl. at 1)

8. The complaint alleges in the factual background section that "DI was forced to rely solely on the veracity and completeness of the consumption data provided by the USAF" (compl. ¶ 22). The factual background section also quotes DI's proposal as stating that "[p]ricing of CLINs 3X00-3X10 assumes the data provided is **both complete and correct**" (*id.* ¶ 25) (emphasis in original).

9. The complaint then alleges two counts (compl. at 1-2).

10. As Count I, the complaint alleges that there was a constructive change entitling DI to an equitable adjustment "due to the USAF's providing inaccurate consumption data" (compl. at 1-2). In support of Count I, the complaint alleges that "DI did as directed and developed its CPFH pricing in the only logical manner—with reliance on the accuracy and completeness of the data provided" (*id.* ¶ 48). Count I continues that, "[u]tilizing the faulty data, DI applied the consumption data for B-model aircraft to Pensacola, causing DI's CPFH for Whiting to be lower than it would have been had the proper consumption data been applied" (*id.* ¶ 49). Count I concludes that "[t]he USAF's provision of faulty data constitutes a constructive change to the Contract" (*id.* ¶ 50).

11. As Count II, the complaint seeks reformation based upon a mutual mistake "regarding the accuracy of the consumption data" (compl. at 2). Count II alleges that

2

"DI expressly informed the Government of DI's belief that the consumption data provided in the Bidder's Library, upon which DI based its CPFH pricing, was both complete and accurate" (*id.* ¶ 53). Count II continues that, "had DI been aware of the mistakes in these data, it could have requested corrected data and adjusted its CPFH proposal accordingly" (*id.* ¶ 55). Count II also alleges that "[n]either the RFP nor the Contract put the risk of a mistake in the consumption data in the Bidder's Library on DI. Notably, the USAF did not use any language to disclaim responsibility for the completeness or accuracy of the data in the Bidder's Library." (*Id.* ¶ 56) Count II concludes that "[t]he Contract price should be reformed to reflect what DI would have proposed if the Bidder's Library data had been accurate" (*id.* ¶ 57).

## DECISION

The government seeks partial summary judgment on the issue regarding DI's alleged mistake and reliance on the completeness of the usage/consumption data in the bidder's library. Based on the language of DI's complaint, the government contends that issue can be interpreted as including the completeness issue, which *DynCorp I* precluded under collateral estoppel. (Gov't mot. at 7) DI replies in opposition to the government's motion that the matter upon which estoppel is sought is irrelevant to the instant appeal, and that DI is making different arguments in this case (app. opp'n at 1).

*I. The Standards for Summary Judgment*

Summary judgment will be granted if a moving party has shown that there are no genuine issues of material fact, and it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A non-movant seeking to defeat summary judgment by suggesting conflicting facts must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, if the non-moving party carries the burden of proof at trial for elements of its case and fails to provide such proof, the moving party is entitled to summary judgment. *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994). In deciding summary judgment motions, we do not resolve controversies, weigh evidence, or make credibility determinations. *Liberty Lobby*, 477 U.S. at 255. Moreover, we draw all reasonable inferences in favor of the non-movant. *Id.*

*II. Collateral Estoppel*

Collateral estoppel does not apply in this appeal. In order to establish that collateral estoppel precludes the relitigation of an issue already decided in another case, a proponent must show that: (1) the issue is identical to one decided in the prior proceeding; (2) the issue was actually litigated; (3) resolution of the issue was essential to the final judgment in the prior proceedings; and (4) the party defending against preclusion had a full and fair opportunity to litigate the issue in the prior proceeding. *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012).

3

The issue here is not identical to the one decided in *DynCorp* I—another appeal arising out of the COMBS contract. In *DynCorp* I, we held that "DI had actual knowledge that the [consumption] data was *incomplete* and that DI made a business decision to submit a proposal despite the risk." 17-1 BCA ¶ 36,653 at 178,498 (emphasis added). While the complaint in this appeal makes passing reference to the consumption data's completeness, the data's completeness is not a significant issue in this appeal (SOF ¶¶ 8-10). Rather, reading the complaint as a whole reveals that the operative issue for both the constructive change and mutual mistake claims is the data's alleged inaccuracy—which the government concedes is distinct from the issue of the data's completeness (*id.*; gov't mot. at 6-7).*

We see no reason to strain to read a claim about the data's completeness into this appeal, only to preclude such a straw-man claim under collateral estoppel. That is particularly true given DI's binding disavowal of any such claim. As DI states in its opposition to the summary judgment motion, "arguments regarding the completeness of government-provided data...are not at issue in the present Appeal" (app. opp'n at 1). Because the data's completeness is not an issue in this appeal, the issue in this appeal is not identical to the issue of the data's completeness that we decided in *DynCorp* I. As such, the government has failed to meet the first prong of the *Laguna Hermosa* case. Therefore, collateral estoppel does not apply in this appeal.

## CONCLUSION

The motion for partial summary judgment is denied.

Dated: 20 March 2018

JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

* The government does not seek to preclude litigation on the issue of whether the data was inaccurate, which it concedes is an issue in this appeal. However, the government contends that, based on the language of the complaint, the issue of mistake and reliance on the accuracy of the data can be interpreted as including the completeness issue. (Gov't mot. at 6-7)

4

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61274, Appeal of DynCorp International LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals