ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| CiyaSoft Corporation | ) ASBCA No. 59913-QUAN |
| | ) |
| Under Contract No. W91B4L-10-P-1475 | ) |

APPEARANCES FOR THE APPELLANT:    W. Jay DeVecchio, Esq.
R. Locke Bell, Esq.
  Morrison & Foerster, LLC
  Washington, DC

APPEARANCES FOR THE GOVERNMENT:    Scott N. Flesch, Esq.
  Army Chief Trial Attorney
MAJ Weston E. Borkenhagen, JA
CPT Timothy M. McLister, JA
LTC Gregory T. O'Malley, JA
  Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE MCNULTY ON APPELLANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before us is CiyaSoft Corporation's (CiyaSoft) motion for partial summary judgment. CiyaSoft seeks summary judgment regarding two legal issues, which it describes as follows (quoted verbatim):

1. Did the parties' contract for 20 single-user licenses limit use to 20 unique single users?

2. Is the Army absolved from liability for its failure to maintain a list of registered users because, by requiring the Army to keep such a list rather than imposing some other means of protecting its software, appellant failed to mitigate its damages?

(App. mot. at 2)

We partially grant the motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

Familiarity with our previous decision in this appeal, *CiyaSoft Corporation*, ASBCA Nos. 59519, 59913, 18-1 BCA ¶ 37,084, is presumed. The following findings of facts from that decision are restated[1] for convenience.

1. On August 18, 2010, appellant was notified via email that Contract No. W91B4L-10-P-1475 had been awarded to it. *CiyaSoft*, 18-1 BCA ¶ 37,084 at 180,510 (finding 9).

2. The contract had a single line item number (CLIN) which described the supplies being purchased as:

ENGLISH DARI SOFTWARE

FFP

SINGLE USER BI-DIRECTIONAL ENGLISH/DARI SOFTWARE LICENSES

w/1 Year Support and Maintenance

FOB: Destination

PURCHASE REQUEST NUMBER: KAF0L3ECE03819

The CLIN indicated the quantity to be purchased was 20 at a Unit Price of $4,840 for a total price of $96,800. *Id.* (finding 10).

3. [Appellant's witness] testified that appellant generally protects itself from unauthorized use of its software by requiring online registration of the software and activation during the installation, which permits appellant to ensure that the software is used only in accordance with the terms of the license granted. This was discussed with the contracting officer during a telephone call made by the contracting officer prior to contract award. *Id.* at 180,511 (finding 15).

4. The contracting officer confirmed that he had called appellant shortly before awarding the contract to confirm the price appellant had quoted and to determine whether appellant would be able to meet the government's needs with respect to delivery. He testified that he had no recollection of discussing software registration and activation.

---

[1] Statements of Fact 1-8 herein are verbatim quotes from our previous decision, with internal footnotes and record citations omitted.

The contracting officer testified that he believed he was purchasing a commercially available, off-the-shelf product and that the government did not have the right to copy or reproduce the software. His testimony also indicated that he had no clear understanding of what a single user software license might entail. *Id.* (finding 16).

5. Online registration requires that the user's computer connect with appellant's servers. When connected, the user, as part of the installation process, must enter a product identification number provided by appellant. Appellant's server, if it recognizes the number entered, will transmit an activation code to the user's computer that activates, i.e., permits the user to use the software. During this registration process the identification number of the computer the software is being installed on will be transmitted to appellant's server. In the case of a single use license, if someone attempts to install, activate and register the software on a second computer, appellant's server will know that the software has been activated and registered previously and will not transmit the information necessary to activate this second copy. *Id.* (finding 17).

6. Appellant decided to delete the online only registration requirement and modified the software before sending it to the government to permit it to be activated without registration. Appellant decided to do this to facilitate the government's use of the software on the government's secured computers, which do not connect to the internet and because appellant understood the software also would be used on some computers in the field, which might not have access to the internet and because [it was] believed that connection to the internet in Afghanistan was often problematic for computers the government did permit to access the internet. Online registration remained possible, but was not required to use the software. *Id.* (finding 18).

7. The license was provided in three different forms. The long form license was a written document included in the box of CDs with the CiyaTran software shipped to the government. It stated in pertinent part:

CiyaTran 4.2 License

> CiyaSoft Corporation standard software license agreement does not apply to this agreement: Activation is not online and online registration is not required.

> This is an agreement between CiyaSoft Corporation and Licensee, who is being licensed to use CiyaTran. The Licensee is the US Government and this License Agreement is based on a contract. The contract number is W91B4L-10-P-1475.

> . . . .

3

2.  Each installation should be activated with respective product ID printed on the face of the CD case and *Licensee agrees to provide CiyaSoft Corporation with a list of activations, along with name or initials or computer name or other information to uniquely identify each activation for those activations that do not go through normal registration due to security concerns.  Each License permits Licensee to install the Software on only one computer system. Licensee will not make copies of the Software or allow copies of the Software to be made by others.*

There was also a written, short form of the agreement included on a separate piece of paper with each CD, inside the shrink wrap surrounding the case.  The short form in its entirety, stated:

By breaking the seal, you accept the terms of the license agreement for contract W91B4L-10-P-1475, CiyaTran Version 4.2.  *This CD can be used for installation on one computer system only.*  Each installation should be activated with the respective product ID printed on the face of the CD case.  This CD should not be copied into another CD, hard disk or any other storage device.  If [t]his CD is defective, contact CiyaSoft Corporation for a replacement.  We will pay for the cost of sending a replacement CD.

Appellant's witness . . . described the shrinkwrap form of the license agreement as being typical for software he has installed.  Finally, the software installation wizard used during the installation process included a clickwrap form of the license agreement.  During the installation process a window opened on the computer's screen in which the following appeared:

License Agreement

CiyaSoft Corporation Standard license agreement does not apply to this agreement.

This is an agreement between CiyaSoft Corporation and Licensee, who is being licensed to use CiyaTran.  The Licensee is the US Government and this License Agreement is based on a contract.  The contract number is W91B4L-10-P-1475.

4

The software could not be installed and used unless the user agreed to the licensing agreement by clicking on the acceptance button and entered the correct product key number that was unique to the copy of the software being used. What appeared in the window however does not indicate what the terms of the license agreement are. Most notably, it does not indicate that the license is a single use license. The record does not indicate whether the terms of the agreement were accessible within the software itself by clicking on another button during the installation process. *Id.* at 180,512 (finding 22).

8. [A witness] testified that an employee from Mission Essential Personnel (MEP), which provided translation services to the government in Afghanistan, installed CiyaTran 4.2 software on his computer in 2012, while he was working for another company, Worldwide Language Resources, providing translation/interpretation services to the government. He observed the employee from MEP installing the software on multiple MEP and Worldwide Language Resource employees' laptops. He was certain the installer was not a government employee, but rather was an employee of MEP. It was not clear from his testimony whether it was the same copy of the software that he witnessed being installed on multiple computers. Nor was it established from his testimony how many copies were installed, particularly whether more than 17 copies were involved. In response to a government interrogatory, appellant identified, by name, five managers from the translation services contractors the witness had worked for in Afghanistan that he claimed had copies of appellant's software. Appellant elected not to provide any testimony or other evidence from these individuals. *Id.* at 180,513-14 (finding 30).

POSITIONS OF THE PARTIES

CiyaSoft argues the government is attempting to re-litigate an issue decided in our previous decision, with respect to the meaning of "20 single-user" licenses as this term is used in the contract. CiyaSoft argues we decided this means the license can only be installed on a single computer for one specific individual and any other use is prohibited. (App. mot. at 6-13) The government argues the term permits more than one individual to use the license on a single computer, and that the license permits the government to remove the software from one computer and to subsequently install it on another computer, so long as a single copy of the software is installed on only one computer at any one time (gov't mot. at 10-13, 16-19).

With respect to the second issue, CiyaSoft argues that there is no duty to foresee a breach and take action to mitigate same prior to the occurrence of a breach (app. mot. at 13-16). The government argues that the duty to mitigate damages extends to actions taken before the contract is formed, so long as a breach is reasonably foreseeable (gov't mot. at 19-21).

5

<u>DECISION</u>

*Standard of Review For Summary Judgment*

The standard of review for summary judgment is well established, having been stated many times. We grant summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Aegis Defense Services, LLC d/b/a Garda World Federal Services*, ASBCA No. 62442 *et al.*, 22-1 BCA ¶ 38,099 at 185,026 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A material fact is one that may affect the outcome of the decision. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Id.* (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987)). "Once the moving party has met its burden of establishing the absence of disputed material facts, the non-moving party must set forth specific facts, not conclusory statements or bare assertions, to defeat the motion." *Id.* (citing *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984)). "A genuine issue of material fact arises when the nonmovant presents sufficient evidence upon which a reasonable fact finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the nonmovant." *Id.* (quoting *C. Sanchez and Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993)).

*The Contract Interpretation Issue*

It is true that in our previous decision we determined that the contract between the parties was for 20 single user licenses (SOF ¶ 2). We did not make any further determination regarding what this term means. We made no findings that determine which of the parties' interpretations of this term is the right one. In order for collateral estoppel to be applicable to the quantum portion of an appeal, four elements must be present: (1) an issue is identical to one decided during entitlement; (2) the issue was actually litigated; (3) the determination of the issue was necessary to the entitlement decision and (4) the party had a full and fair opportunity to litigate the issue. *ADT Constr. Grp., Inc.by Timothy Cory, Chapter 7 Trustee*, ASBCA No. 57322, 15-1 BCA ¶ 35,893 at 175,471 (citing *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012)); *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1366 (Fed. Cir. 2000). The government's argument that it is not collaterally estopped from contesting CiyaSoft's interpretation of the term "single user" is correct because the second and third elements are not present (gov't mot. at 13-16). The appeal has been bifurcated, so we only considered entitlement initially. It was not necessary to decide what the specific meaning, or limitations of "single user" were as used in the license, which has significant ramifications with respect to quantum, but little with regard to entitlement. Accordingly, CiyaSoft's argument that this issue has been litigated and decided is incorrect.

6

In support of its argument regarding how this term is to be interpreted, the government contends it has evidence, which directly refutes CiyaSoft's arguments (*id*. at 2). In this regard, the government notes that "single user" is not defined in the contract (*id*. at 4). Attached to the government's opposition is a declaration from an expert witness, who states the term "single user" license as used in the software industry does not restrict the use of a copy of software to only a single specific user. Instead he proffers the term is akin to a library book, which permits many people, but only one person at a time, to use it. (*Id*. at ex. 1 ¶¶ 3-4). The government argues that the evidence offered by its expert in the form of the declaration it attached as an exhibit to its response to CiyaSoft's motion raises issues of material fact that precludes the granting of summary judgment on this issue. (*Id*. at 10-13). We agree. We find that this evidence, if we were to find it credible and persuasive, contradicts CiyaSoft's interpretation of the contract. Drawing the inferences we are required to draw in favor of the government, as the non-movant, we find that a dispute over a material fact exists with respect to the interpretation to be given to the contract's "single user" term. Accordingly, we deny CiyaSoft's motion with respect to this issue. Having decided a dispute exists regarding a material fact relating to the interpretation of this contract term, we need not and do not consider the government's other arguments relating to this issue. (*Id*. at 17-18)

*The Failure To Mitigate Damages Issue*

Failure to mitigate damages is an affirmative defense that should be pleaded in an answer or risks being waived. *Shell Oil Co. v. United States*, 896 F.3d 1299, 1315-16 (Fed. Cir. 2018). *See also Michael, Inc.*, ASBCA No. 35653, 92-1 BCA ¶ 24,412 at 121,863 (government waived affirmative defense of lack of notice by not raising it until post-hearing brief); *Northrop Worldwide Aircraft Servs., Inc.*, ASBCA Nos. 45216, 45877, 96-2 BCA ¶ 28,574 at 142,630-31 (failure to timely raise affirmative defense may waive it); Board Rule 6(b) (requiring government to include in its answer any affirmative defense). The government did not plead this affirmative defense in its answer, but this does not conclude our analysis. The Federal Circuit has stated that failure to plead an affirmative defense does not always result in waiver. *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1376 (Fed. Cir. 2005). Noting that the purpose of Federal Rules of Civil Procedure, Rule 8(c), which deals with pleading affirmative defenses, is to give an opposing party notice of the defense and a chance to respond, the court found that the district court in the decision it was reviewing had not committed error by permitting an unpled affirmative defense to be asserted in a motion for summary judgment because the opposing party had had the opportunity to respond and brief the issues and there was no unfair prejudice. *Id*. at 1376-77. The circumstances in that case appear to be virtually identical to those of this appeal, where the defense was unpled, raised in response to CiyaSoft's motion for partial summary judgment, but CiyaSoft has had the opportunity to respond and brief the issue in its reply. Moreover, CiyaSoft has identified no unfair prejudice from allowing this defense now. Accordingly, we find the defense has not been waived and consider the government's arguments.

The government argues CiyaSoft is obligated to take action to mitigate damages prior to any breach, which it failed to do when it deleted the online registration requirement from its software; "[t]he decision by appellant to eliminate the best method of mitigating damages in the event of a breach cannot be now held against the Army. Similarly, the appellant's unilateral removal of the online registration requirement cannot equate to 'reasonable efforts' to mitigate damages" (*id*. at 20). The government relies on *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273 (3rd Cir. 2014) and 11 Corbin on Contracts §57.11 in support of its argument. Neither supports the government's argument and we are not aware of any authority that requires a party to foresee the possibility that a breach may occur and to take steps to mitigate its potential resulting damages before a breach has actually occurred. In *VICI Racing*, the court ruled the defendant had waived the defense of failure to mitigate damages by failing to plead it in its answer. 763 F.3d at 301-02. Accordingly, the court neither considered whether the duty to mitigate damages extends to action required prior to a breach, nor made any such ruling. Similarly, the section of Corbin on Contracts cited by the government includes no language supportive of the government's argument. The RESTATEMENT (SECOND) OF CONTRACTS indicates the duty to mitigate damages arises only upon the occurrence of the breach, or when circumstances indicate that a breach is forthcoming; "*[o]nce a party has reason to know that performance by the other party will not be forthcoming* . . . . he is expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise." RESTATEMENT (SECOND) OF CONTRACTS §350 cmt. b (1981) (emphasis added). The government has failed to point to any circumstances existing at the time CiyaSoft elected to remove the online registration requirement from its software that would have indicated that the government's adherence to the licensing agreement would not be forthcoming, which would have triggered the duty to mitigate its potential damages.

We find the government's arguments unpersuasive. We agree with CiyaSoft that the law imposes no duty to foresee a breach and to take action to mitigate any damages that may result before performance of a contract has even begun. Accordingly, we grant CiyaSoft's motion with regard to this issue.

CONCLUSION

CiyaSoft's motion is partially denied and partially granted as set forth above.

Dated: June 1, 2022

CHRISTOPHER M. MCNULTY
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59913-QUAN, Appeal of CiyaSoft Corporation, rendered in conformance with the Board's Charter.

Dated: June 3, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

9