NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ROBERT L. CAMPO, MICHAEL CAMPO, LEPETICH AQUACULTURE, L.L.C., M.J. LEPETICH OYSTERS, L.L.C., LOUIS CURT PANNAGL, POINT A LA HACHE OYSTER FISHERIES, INC., TONY J. TESVICH, JR., TJT, LLC, TONY TESVICH OYSTERS, INC., NIKOLA ZARAK, DIANE ZARAK, AMALIA, INC., KUZMA I. TESVICH, JR.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-2312

---

Appeal from the United States Court of Federal Claims in Nos. 1:20-cv-00044-RTH, 1:20-cv-00047-RTH, 1:20-cv-00055-RTH, Judge Ryan T. Holte.

---

Decided: May 21, 2026

---

CAMILO K. SALAS, III, Salas & Co., L.C., New Orleans, LA, argued for plaintiffs-appellants. Also represented by ASHLEY M. LIUZZA, MICHAEL G. STAG, Stag Liuzza, LLC, New Orleans, LA.

ROBERT PARKE STOCKMAN, Appellate Section, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by AMBER BETH BLAHA; ADAM R.F. GUSTAFSON.

———————————

Before PROST, CLEVENGER, and STARK, *Circuit Judges*.

PROST, *Circuit Judge*.

In 2019, the Bonnet Carré Spillway ("Spillway") was opened for a total of 123 days to prevent the Mississippi River from flooding New Orleans. This action resulted in the destruction of existing oyster stock, oyster beds, and reefs.

Oyster farmers affected by the 2019 Spillway events sued the government in the U.S. Court of Federal Claims, alleging that the government took their real and personal property (e.g., oyster stocks, oyster beds, and reefs) in violation of the Takings Clause of the Fifth Amendment. The Court of Federal Claims dismissed their complaint. Because Appellants failed to allege a cognizable property interest for Fifth Amendment purposes, we affirm the Court of Federal Claims' dismissal.

BACKGROUND

I

Water bottoms in Louisiana are largely owned by the state of Louisiana. LA. STAT. ANN. § 56:3(A) (1985). And "all oysters and other shellfish and parts thereof grown thereon, either naturally or cultivated, and all oysters in the shells after they are caught or taken therefrom, are and remain the property of the state [(Louisiana)]." *Id.* Louisiana has created a statutory scheme for oyster farming, and all oyster leases issued by the state of Louisiana are governed by that scheme. *Id.* §§ 56:424, 56:425(A). Oyster

farmers may apply to lease the state-owned water bottoms. The Louisiana Department of Wildlife and Fisheries reviews the applications and may issue leases. *Id.* § 41:1225(A) (authorizing the Louisiana Department of Wildlife and Fisheries to "grant leases on state-owned waterbottoms for oyster cultivation, bedding, and harvesting"). Appellants allege that they own oyster leases issued by the Louisiana Department of Wildlife and Fisheries.

## II

The Spillway was constructed in 1931 in response to the Great Mississippi Flood of 1927 that inundated much of the Mississippi River basin. It is located in St. Charles Parish, Louisiana—about 32.8 miles west of New Orleans—and serves as a flood-control structure that diverts freshwater into the Lake Pontchartrain Basin, the Mississippi Sound, and ultimately the Gulf of Mexico.

The U.S. Army Corps of Engineers ("the Corps") operates the Spillway. The Corps does not operate the Spillway on a fixed schedule; rather, it monitors flood models and river-level forecasts to determine when the Spillway needs to be opened to divert water.

Relevant to this dispute is the Corps' decision to open the Spillway in 2019. To minimize potential flood damage to New Orleans and surrounding coastal areas, the Corps opened the Spillway for 123 days—from February 27 through April 11 and then from May 10 through July 27. During this time, nearly ten trillion gallons of freshwater from the Mississippi River entered oyster estuaries, lowering salinity levels of the waters and marshes where oyster farmers cultivate, grow, harvest, and process oysters.

## III

In 2020, Appellants filed three separate complaints claiming that the 2019 opening of the Spillway, which reduced ambient salinity levels and damaged oysters

allegedly within their leases, resulted in a taking under the Fifth Amendment. These complaints were consolidated.

The government moved to dismiss in part Appellants' complaint, arguing that Appellants lack a compensable property right in the oysters. The Court of Federal Claims denied the government's motion. *Campo v. United States*, 157 Fed. Cl. 584 (2021). In a lengthy final footnote, the court faulted both parties for failing to include a year for their statutory citations, noting it was unclear whether the parties were referring to the correct version. *Id.* at 618 n.27. Thus, "[g]iven the potential importance of these statutes to this case," the parties were directed to include a discussion of the applicability of the statutes (and the relevant versions) in their joint status report. *Id.* The court also allowed limited discovery on this issue. After limited discovery was completed, the government moved to dismiss Appellants' complaint or, in the alternative, for summary judgment, arguing that the relevant Louisiana statutes preclude Appellants from suing the United States for claims allegedly arising out of the 2019 Spillway events. The Court of Federal Claims granted the government's motion and dismissed the complaint. *Campo v. United States*, 169 Fed. Cl. 502 (2024). It explained that the relevant Louisiana law governing the Appellants' oyster leases barred them from the instant suit. *Id.* at 520, 530.

Appellants then filed a motion for reconsideration, arguing that the Court of Federal Claims "committed factual or legal error by applying its ruling to leases that [Appellants] obtained prior to the 2016 amendments" to the relevant Louisiana statutes. *Campo v. United States*, 172 Fed. Cl. 472, 474 (2024) (cleaned up). According to Appellants, if the court had applied the 2006 version of the relevant law, it would have reached a different result. The court denied the motion, concluding that the relevant portions of the statute as amended in 2006 were "substantively the same as the 2016 version." *Id.* at 476; *see also id.* at 477.

Appellants timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

I

We review the Court of Federal Claims' dismissal for failure to state a claim and issues of statutory interpretation de novo. *Lesko v. United States*, 161 F.4th 1352, 1358 (Fed. Cir. 2025) (en banc). In deciding the motion-to-dismiss issue, we must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012). We review the Court of Federal Claims' denial of reconsideration for abuse of discretion. *Ind. Mun. Power Agency v. United States*, 59 F.4th 1382, 1384 (Fed. Cir. 2023).

II

The main issue on appeal is whether there was a permanent taking of Appellants' property interests in violation of the Fifth Amendment. *Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004). To resolve this issue, we must determine whether the operation of the Spillway in 2019 was for "coastal protection, conservation, or restoration" as defined under the 2006 version of the Louisiana Revised Statutes § 56:423.[1] Because we conclude that it was, we also conclude that Appellants have failed to allege a cognizable property interest for purposes

---

[1] Appellants conceded at oral argument that if the relevant 2016 Louisiana statutes applied, then they would not have a takings claim. Oral Arg. at 3:03–18, No. 24-2312, https://www.cafc.uscourts.gov/oral-arguments/24-2312_04132026.mp3. Thus, our analysis will focus only on the leases that were executed or renewed after the 2006 amendments and not subject to the 2016 amendments.

of the Fifth Amendment and thus affirm the Court of Federal Claims' dismissal of Appellants' complaint.

## III

The Fifth Amendment's Takings Clause provides: "[N]or shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. The Constitution does not create property interests compensable under the Fifth Amendment. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "'[E]xisting rules and understandings' and 'background principles' derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking." *Maritrans Inc. v. United States*, 342 F.3d 1344, 1352 (Fed. Cir. 2003) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030 (1992)). "[B]ackground principles of law may inhere in a plaintiff's title to his property and thereby limit his ability to recover for a taking." *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1152 (Fed. Cir. 2014) (cleaned up).

We thus start our analysis with the relevant 2006 Louisiana statutes and how those statutes define the scope of Appellants' alleged property rights associated with their oyster leases at issue in this appeal, which were all signed after the 2006 amendments went into effect.

Louisiana has enacted a statutory scheme that regulates the state's oyster industry. This statutory scheme limits the property rights of oyster lessees and prevents them from raising certain claims against the United States. The 2006 version of § 56:423 stated that property rights enjoyed by oyster lessees are "subordinate to the rights or responsibilities of the state, any political subdivision of the state, the United States, or any agency or agent thereof, to take any action in furtherance of *coastal protection, conservation, or restoration*." LA. STAT. ANN. § 56:423(A) (2006) (emphasis added). That same section

defined "coastal protection, conservation, or restoration" to mean "any project, plan, act, or activity for the protection, conservation, restoration, enhancement, creation, preservation, nourishment, maintenance, or management of the coast, coastal resources, coastal wetlands, and barrier shorelines or islands." *Id.* The 2006 version of the statute also limited the types of actions an oyster lessee could raise:

> [N]o lessee shall have any right to maintain any action against the state, any political subdivision of the state, the United States, or any agency, agent, contractor, or employee thereof for any claim arising from any project, plan, act, or activity in relation to coastal protection, conservation, or restoration, except as provided in R.S. 56:427.1.[2]

*Id.* § 56:423(B)(1); *see also id.* § 56:427.1(A) ("[T]he United States . . . shall be held free and harmless from any claims arising under any oyster lease . . . for any purpose from diversions of fresh water or sediment . . . or any other actions taken for the purpose of coastal protection, conservation, or restoration.").

The Spillway is a "project, plan, act, or activity for the protection, . . . maintenance, or management of the coast." *Id.* § 56:423(A). The Spillway was opened in 2019 because "river levels were predicted to rise to minor flood stage in New Orleans." J.A. 81; *see also* J.A. 59. Because the 2019 Spillway events were for "coastal protection, conservation, or restoration," Appellants' leases prevent them from "maintain[ing] any action" against the United States for "any project, plan, act, or activity in relation to coastal protection, conservation, or restoration." LA. STAT. ANN. § 56:423(B)(1) (2006). Moreover, Appellants concede that

---

[2]    The exception noted here (R.S. 56:427.1) is not relevant to the parties' dispute.

the Spillway is a "fresh water diversion structure," J.A. 72, and under § 56:427.1, "the *United States . . . shall be held free and harmless* from any claims arising under any oyster lease . . . *from diversions of fresh water* or sediment . . . or any other actions taken for the purpose of coastal protection."    LA. STAT. ANN. § 56:427.1(A) (2006) (emphasis added).  Thus, Appellants have failed to state a claim under the 2006 amendments, which subordinate Appellants' oyster leases to the Corps' operation of the Spillway and place limits on claims against the United States.

Appellants argue that the Spillway's operations do not fall within the definition of "coastal protection, conservation, or restoration." Appellants' Br. 49. We disagree. Appellants rely on the following language from their complaint to support their argument: "[The Spillway] is not a coastal restoration project or a freshwater diversion used for coastal restoration or for creation or restoration of wetlands or habitats in the Lake Pontchartrain Basin." J.A. 80.  That is a legal conclusion, and we are not required to accept legal conclusions when reviewing a motion to dismiss.  *See Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019).  In any event, avoiding coastal flooding is a means to protect the coast.

Appellants also rely on several cases that apparently hold that Louisiana oyster lessees have "compensable property rights in the oysters" for leases executed before 2016. *See* Appellants' Br. 35–36.  But those cases issued *before* the Louisiana state legislature made the 2006 amendments.  Those cases did not have the opportunity to evaluate the 2006 amendments, such as the changes to § 56:423.

For the foregoing reasons, because Appellants failed to demonstrate the existence of a cognizable property interest for Fifth Amendment purposes, our "task is at an end." *Am. Pelagic Fishing*, 379 F.3d at 1372.  There can be no takings claim when the Appellants never had a cognizable property interest.

CONCLUSION

We have considered Appellants' remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.

**AFFIRMED**