NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**APPLE INC.,**
*Appellant*

**v.**

**SMART MOBILE TECHNOLOGIES LLC,**
*Appellee*

---

2024-1352

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2022-00981.

---

Decided:  January 21, 2026

---

ANGELA M. OLIVER, Haynes and Boone, LLP, Washington, DC, argued for appellant.  Also represented by ANDREW S. EHMKE, DEBRA JANECE MCCOMAS, Dallas, TX; ADAM CARL FOWLES, Plano, TX; LAURA VU, San Francisco, CA.

GREER N. SHAW, Graves & Shaw LLP, Los Angeles, CA, argued for appellee.  Also represented by PHILIP GRAVES.

---

Before LOURIE, REYNA, and CHEN, *Circuit Judges.*

REYNA, *Circuit Judge.*

Apple Inc. appeals from a final written decision of the United States Patent and Trademark Office's Patent Trial and Appeal Board, which found that Apple failed to prove that the challenged claims of U.S. Patent No. 8,472,936 would have been invalid as obvious. Asserting issue preclusion, Apple argues that the challenged claims disclose substantively identical limitations as the claims that the Board found invalid in prior *inter partes* review proceedings. Apple also challenges the Board's determination on the basis that the Board made an erroneous claim construction. For the following reasons, we reverse in part, vacate in part, and remand.

## BACKGROUND

Apple Inc. ("Apple") petitioned for *inter partes* review ("IPR") of three related patents owned by Smart Mobile Technologies LLC ("Smart Mobile"): U.S. Patent No. 8,472,936 ("'936 patent); U.S. Patent No. 8,761,739 ("'739 patent); and U.S. Patent No. 8,442,501 ("'501 patent). The three patents recite similar claims and share the same specification. [1] The patents relate to a mobile device that is dynamically software configurable for a variety of environments. The mobile device communicates with a server that stores functional instruction sets and software. When the mobile device moves to a new environment, it can "switch itself for optimal performance" by downloading a functional instruction set from the server. '936 patent at 4:39–42.

---

[1]    We cite to the specification of the '936 patent when discussing the three patents' common specification.

Claim 1 of the '936 patent is reproduced below. The appeal centers on the italicized term "dynamically configurable."

1. [1.0] A wireless communication system, comprising:

[1.1] a wireless device which supports voice and data communications;

[1.2] a server; and

[1.3] a memory, wherein a processor is communicatively coupled with the memory,

[1.4] wherein the memory stores functional instructions including instructions for use in providing a plurality of functions to the wireless device, [1.5] at least one of the functional instructions provided for switching between one or more networks including at least one public network, and

[1.6] wherein the memory further stores a plurality of communication protocols, that facilitate communication between the server and the wireless device, and [1.7] wherein the server is configured to send to the wireless device a plurality of functions, [1.8] wherein the wireless device is *dynamically configurable* from a first function to a second function to enable a plurality of functions at the wireless device and [1.9] wherein the wireless device is configured for Internet access.

*Id.* at 9:20–39 (emphasis added).

Similar to the '936 patent's "dynamically configurable" term, claim 1 of the '739 patent has a "dynamic conversion" term that was disputed by the parties. Claim 2 also recites a "switch dynamically" limitation that the parties addressed in connection with claim 1. Claims 1 and 2 of the '739 patent are reproduced below.

1. [1.0] A wireless communication system, comprising:

[1.1] a wireless device which supports voice and data communications;

[1.2] a server;

[1.3] a memory communicatively coupled to the wireless device, wherein a processor is communicatively coupled with the memory,

[1.4] wherein the memory stores functional instructions for use in providing a plurality of functions to the wireless device, [1.5] at least one of the functional instructions provided for switching between one or more networks including at least one public or wireless carrier network, and

[1.6] wherein user specific information of the wireless device is stored on the server; and

[1.7] wherein the memory further stores a plurality of communication protocols, that facilitate communication between a server and the wireless device, and [1.8] wherein the server serves as a primary repository or exchange to deliver various functions to the wireless device, and [1.9] wherein the server enables *dynamic conversion* of the wireless device from a first function to a second function to provide a plurality of functions at the wireless device.

2. The system of claim 1, wherein the wireless device is adapted to *switch dynamically* between local networks and public carrier networks.

'739 patent at 9:25–50 (emphasis added).

### Related Proceedings

Apple petitioned for review of the '739 patent and '501 patent in IPR Nos. IPR2022-00980 ("'980 IPR") and IPR2022-00808 ("'808 IPR"), respectively. Apple

challenged claim 1 of both patents based on U.S. Patent No. 5,949,775 ("Rautiola") in view of U.S. Patent No. 5,689,708 ("Regnier") and U.S. Patent No. 5,854,985 ("Sainton").

In its '980 IPR petition,[2] Apple contended that the claim terms of the '739 patent should be given their plain and ordinary meaning, with no term requiring specific construction. The Board disagreed, instead tentatively construing "dynamic conversion" in limitation [1.9] as "conversion when and as needed and in real time." *See* J.A. 3103.

Smart Mobile argued that the Board should instead construe "dynamic" to mean "when and as needed, responsive to variable conditions and *without the need for user intervention*" to execute the recited "conversion" or "switch." J.A. 2964 (emphasis added). Apple adopted the Board's construction, arguing that Smart Mobile's proposal contradicted the intrinsic record.

In its final decision, the Board declined to adopt a construction, instead finding all challenged claims unpatentable under either party's construction. Smart Mobile did not file a notice of appeal from either final written decision in the '980 and '808 IPRs, and the deadline to do so under 37 C.F.R. § 90.3(a)(1) has now expired.

### Underlying Proceeding

In IPR No. IPR2022-00981 ("'981 IPR"), Apple petitioned for review of claims 1, 8–11, 13, 15, 17, and 19 of the '936 patent on two obviousness grounds. In Ground 1, Apple relied on the same combination of prior art references as in the '980 and '808 IPRs: Rautiola in view of Regnier

---

[2]    The parties presented similar arguments and the Board reached similar conclusions in the '808 IPR. We cite only to the '980 IPR to avoid repetition.

and Sainton. The Board ultimately found that Apple failed to prove unpatentability as to any of the challenged claims. Its finding turned on its construction of the claim term "dynamically configurable" to mean "configurable when and as needed and in real time, without the need for user intervention."

Apple appeals the Board's final written decision in the '981 IPR. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

Apple raises two issues on appeal. First, Apple argues that the Board's finding in the '980 and '808 IPRs that claim 1 of the '739 and '501 patents would have been obvious precludes the Board from reaching the opposite conclusion regarding claim 1 of the '936 patent in the '981 IPR. Second, Apple contends that the Board's construction of the word "dynamically" is not supported by the intrinsic record or general claim construction principles. We address each argument in turn.

We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *Almirall, LLC v. Amneal Pharms. LLC*, 28 F.4th 265, 271–72 (Fed. Cir. 2022). The ultimate question of issue preclusion is a legal question. *Google LLC v. Hammond Dev. Int'l, Inc.*, 54 F.4th 1377, 1380 (Fed. Cir. 2022). We review the issue of claim construction of a patent claim de novo and underlying fact findings for substantial evidence. *Dionex Softron GmbH v. Agilent Techs., Inc.*, 56 F.4th 1353, 1358 (Fed. Cir. 2023).

## I. Issue Preclusion

Determining whether issue preclusion applies presents a procedural question that we evaluate according to regional circuit law. *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1355 (Fed. Cir. 2024). We apply this court's precedent, however, to questions of issue preclusion

that implicate substantive issues of patent law. *Wisconsin Alumni Resch Found. v. Apple Inc.*, 112 F.4th 1364, 1378 (Fed. Cir. 2024) ("*WARF*").

A party seeking to prevail on issue preclusion must show that (1) the issue sought to be precluded is the same as that involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked had a full and fair opportunity to litigate the issue in the first action. *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994). No party disputes that the third element is met here. Thus, we only address elements 1, 2, and 4.

## A.

We first consider whether the issue sought to be precluded in the '981 IPR, i.e., whether claim 1 of the '936 patent is unpatentable, is the "same" issue that was before the Board in the '980 IPR. *See* Appellant Br. 29–30 (arguing that "[d]espite the minor differences in the claim limitations, the same issue of patentability was at issue in both the '739 Patent and '936 Patent IPRs"). We note that the claims at issue do not recite identical language. We have held, however, that patent claims need not be identical for issue preclusion to apply. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342–43 (Fed. Cir. 2013). Instead, the question is whether the differences between the claims "materially alter the question of invalidity." *Id.* at 1342.

A side-by-side, limitation-by-limitation comparison of the claims reveals their marked similarity. *See* Table at Appellant Br. 29–30. The respective claim limitations, including the "dynamic conversion" and "dynamically configurable" limitations that were the focus of the parties' arguments, have only minor differences. Smart Mobile neither contends that these minor differences affect the invalidity analysis nor explains how claim 1 of the '936 patent

is substantively distinct from the prior, invalidated claim 1 of the '739 patent.

Moreover, the parties' patentability and claim construction arguments indicate that they understood the claim language in the two claims to carry the same meaning. Apple presented the same theory of obviousness in its '980 IPR as in Ground 1 of its '981 IPR: "§ 103 (Pre-AIA) Rautiola in view of Regnier and Sainton." J.A. 85, 2855. Smart Mobile responded to the two petitions with nearly identical patentability contentions. *Compare* J.A. 405–16 *with* J.A. 2992–3003. Regarding claim construction, the parties proposed nearly identical constructions and arguments for "dynamically" in the '936 patent as for "dynamic" in the '739 patent. *Compare* J.A. 378–92 *with* J.A. 2964–79; *compare* J.A. 441–51 *with* J.A. 3027–32.

In view of the claims' similar language, as reflected by the parties' understanding in the record, we conclude that claim 1 of the '936 patent is substantially similar to claim 1 of the '739 patent. The claims' differences do not "materially alter the question of invalidity," and, thus, the identity of issues requirement for finding collateral estoppel is satisfied. *See Ohio Willow*, 735 F.3d at 1342.

Instead of defining the issue based on Apple's challenge to claim 1 in the respective IPRs, Smart Mobile would focus on the Board's reliance on specific references for individual claim limitations in the '980 IPR final written decision. Smart Mobile argues that "the '936 [patent] IPR involved *different* prior art asserted for '*dynamically configurable*' (Rautiola-Regnier) than the prior art that the Board relied on for '*dynamic conversion*' in the ['980 and '808] IPRs (Sainton)." Appellee Br. 13–14.

But that argument is directed to a different form of preclusion (*e.g.*, whether a particular reference teaches a particular claim limitation) than the one at issue here. Under *Ohio Willow*, issue preclusion can apply where the "issue" is invalidity of an entire patent claim, as opposed to specific

elements or factual details within the claim. 735 F.3d at 1342–43. We applied issue preclusion in *Ohio Willow* to invalidate a claim that was immaterially different from a previously invalidated claim in a different patent. *Id.* Our analysis did not turn on any single limitation or prior art reference, but on the broader claim-by-claim analysis to an already-invalidated claim.

Similarly, in *Soverain Software*, we applied this type of issue preclusion to invalidate a dependent claim of a previously invalidated independent claim when the added limitation did not materially alter the question of validity. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015). And in *Google*, we applied the same principle to invalidate claims that we found to be materially identical. *Google*, 54 F.4th at 1380–82. None of these cases required consideration of whether a specific prior art reference taught a particular claim limitation. Accordingly, Smart Mobile's narrower factual focus is irrelevant, and we reject it.

For the foregoing reasons, we conclude that the issue sought to be precluded in the '981 IPR is the same issue that was before the Board in the '980 IPR. To conclude otherwise would allow a patentee to assert a claim substantially similar to a claim previously found unpatentable by the PTAB.

B.

We next consider whether the issue, i.e., whether claim 1 of the '739 patent is unpatentable, was actually litigated in the '980 IPR. The requirement that the issue have been actually litigated is generally satisfied "if the parties to the original action disputed the issue and the trier of fact decided it." *Freeman*, 30 F.3d at 1466.

The record shows that Smart Mobile and Apple disputed whether claim 1 of the '739 patent is unpatentable. The parties' arguments centered on claim 1's limitations

[1.5] and [1.9] and claim 2. *See* J.A. 2882–83, J.A. 2892–2901 (Petition, citing teachings of Rautiola and Sainton for claim limitation [1.5], reciting "switching between one or more networks," and claim 2, reciting "switch dynamically between local networks and public carrier network."); J.A. 2965–66 (Patent Owner Response, proposing claim construction for "dynamic" as used in both claim limitation [1.9]'s "dynamic conversion" and claim 2's "switch dynamically"); J.A. 2922–3004 (Patent Owner Response, addressing Apple's arguments regarding claim limitations [1.5] and [1.9] and claim 2, including Apple's reliance on Sainton.)

The Board decided the issue, finding that Apple had shown all challenged claims to be unpatentable. *See* J.A. 3119–27 (adopting Smart Mobile's grouping of limitation [1.9] with claim 2); J.A. 3127 (recognizing and rejecting Smart Mobile's arguments regarding Sainton and instead finding Apple's arguments persuasive). Because the parties disputed the issue and the Board drew a final conclusion, we find that the second requirement of issue preclusion is satisfied.

C.

Finally, we consider whether Smart Mobile had a full and fair opportunity to litigate the issue of whether claim 1 of the '739 patent is unpatentable in the '980 IPR. In determining whether a party has had a full and fair opportunity to litigate, we look at (1) whether there were significant procedural limitations in the prior proceeding, (2) whether the party had an incentive to litigate fully the issue, and (3) whether effective litigation was limited by the nature or relationship of the parties. *Banner v. United States*, 238 F.3d 1348, 1354 (Fed. Cir. 2001). We conclude that, based on the record before us, the "full and fair opportunity to litigate" requirement of issue preclusion is met. As discussed above, Smart Mobile argued the validity of claim 1 of the '739 patent, including Sainton's teaching of

"dynamic" under Smart Mobile's construction. Smart Mobile has not "presented, let alone supported, any allegation of a legally significant disparity in incentives between the present IPR and the two other [Sainton]-based IPRs at issue." *Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1251–52 (Fed. Cir. 2019).

Finding all elements of issue preclusion satisfied, we hold claim 1 of the '968 patent unpatentable. The Board's decision as to the patentability of the dependent claims of the '968 patent rested entirely on its conclusion that claim 1 was not unpatentable. Since the Board has not separately addressed the dependent claims, we vacate its decision as to those claims and remand for further consideration.

## II. Claim Construction

Apple argues that the Board erred in construing "dynamically configurable" in claim 1 of the '936 patent to require that configuration occur "without the need for user intervention." Apple contends that the Board's construction improperly imports limitations from the specification and relies on features not recited in claim 1. Apple also argues that claim differentiation counsels against the Board's construction because claim 18, which recites "wherein the wireless device is adapted to recognize its proximity to various wireless networks and initiate a configuration based thereon," *does* require configuration without user intervention.

The goal of claim construction is to give a claim term the meaning understood by a person of ordinary skill in the art at the time of invention. *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1358 (Fed. Cir. 2017). The skilled artisan's understanding of the claim term is not limited to the claim language surrounding the disputed term; it takes into account the context in which the term is used. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). This context is usually provided by the specification, "the single

best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The ordinary meaning of a claim term is therefore its meaning to the person of ordinary skill in the art after reading the entire patent. *Phillips*, 415 F.3d at 1321.

Here, the plain language of the claims does not require user intervention. We have held, moreover, that when a patent "repeatedly and consistently" characterizes a claim term in a particular way, it is proper to construe the claim term in accordance with that characterization. *GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370 (Fed. Cir. 2016) (citing *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1318 (Fed. Cir. 2014); *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1374–75 (Fed. Cir. 2009)). The specification of the '936 patent includes numerous examples of switching from a first function to a second function. The specification repeatedly and consistently characterizes the switching as occurring without user intervention. For example, the mobile device "when in the home wireless network mode may *switch itself* for this task for optimal performance by downloading/uploading" functional instruction software. J.A. 64, 5:1–4 (emphasis added); *see also* J.A. 65, 8:9–12 (the mobile device "switches itself" for optimal performance); J.A. 65, 8:36–39 (same). In another example, the mobile device in conjunction with the server "can decide the preferred mode to be in." J.A. 63, 4:8–9. The specification explains that "[t]he mobile device is dynamically software reconfigurable for the various environments." J.A. 62, 2:35–36. Moreover, the specification contains no description of the user of the device issuing commands to the device to cause it to switch functions.

The Board's construction is further reinforced by the applicant's statements in the prosecution history of the '936 patent's great-grandparent, the '950 patent. J.A. 16–18; *see Phillips*, 415 F.3d at 1317 ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the

invention . . . .") There, the applicant distinguished the claimed invention from a prior art reference by characterizing the prior art as "manual" and "not enabled for dynamic sensing nor conversion." *See* J.A. 2360. By highlighting that the prior art required manual operation, the applicant explicitly positioned the claimed invention as "dynamic," supporting that the claimed "dynamic" functionality operates without user intervention.

In view of the consistent disclosure, corroborated by the prosecution history, we agree that the proper construction of "dynamically configurable" includes configuration "without the need for user intervention."

Apple's claim differentiation argument does not alter this conclusion. Claim differentiation is "not a hard and fast rule," but rather a presumption that can be overcome when the intrinsic evidence dictates a contrary construction. *Seachange Int'l, Inc. v. C–COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005). Because the plain language does not require user intervention and the specification so consistently describes switching as occurring without the need for user intervention, the presumption is overcome here. In addition, claim 18 differs from claim 1 in more ways than just "initiat[ing] a configuration," so any inference derived from claim 18, without more, is weak at best.

We conclude that the Board properly construed "dynamically configurable" to mean "configurable when and as needed and in real time, without the need for user intervention." Because the Board found the claims of the '729 patent unpatentable under a construction that specifies "without the need for user intervention," our conclusion here does not disturb our finding on issue preclusion. *See* J.A. 3120.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the reasons stated above,

14                 APPLE INC. v. SMART MOBILE TECHNOLOGIES LLC

we reverse the Board's judgment regarding claim 1 of the
'968 patent.  We vacate its judgment regarding dependent
claims 8–11, 13, 15, 17, and 19 and remand for considera-
tion of the patentability of those claims.

### REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED

### COSTS

Each party shall bear its own costs for this appeal.